# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2739

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Fenaris Rashaun Braggs, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 9, 2002

Filed:  January 30, 2003

_____

Before McMILLIAN, LAY, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Fenaris Rashaun Braggs (Braggs) appeals the district court's[1] assessment of a two-level enhancement for possessing a dangerous weapon during the commission of a drug trafficking offense under U.S. Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1) (2000).  Braggs contends the enhancement was assessed in error because there is no evidence he knew of, or could have reasonably foreseen, the

_____

[1]The Honorable Michael J. Melloy, then United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit Court of Appeals.

presence of a .45 caliber handgun in the vehicle in which he rode as a passenger after selling crack cocaine to an informant. We disagree and affirm.

## I. BACKGROUND

A jury convicted Braggs on Counts I and II of unlawful distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (2000), and on Count III of possession of a firearm as an unlawful user of a controlled substance in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2). The district court sentenced Braggs to 210 months imprisonment after increasing his offense level by two levels under U.S.S.G. § 2D1.1(b)(1) for possessing a weapon during a drug crime.[2] Braggs initially objected to the two-level enhancement and now appeals.

Braggs's conviction is based on three separate events. First, on November 28, 2000, Braggs sold a half ounce of crack cocaine to Cortez Hawkins (Hawkins), who was cooperating with law enforcement. Earlier that month, law enforcement had apprehended Hawkins when he possessed a handgun and a substantial amount of crack cocaine.

Second, on January 4, 2001, Braggs shot Destiny Thurman (Thurman), his girlfriend, in the leg with a .25 caliber handgun. Braggs admitted using marijuana regularly and had smoked marijuana a day or two before the shooting and again smoked marijuana immediately after the shooting. The handgun was never recovered. The January 4, 2001 shooting was the basis of Count III. Braggs claims the shooting was an accident. However, his criminal history reflects at least five other assaults on Thurman within a one-year period, one while she was pregnant. During one assault in November 2000, Braggs threatened Thurman's life with a handgun.

---

[2]The district court sentenced Braggs based on a total offense level of 32 and a criminal history category of VI (14 criminal history points), for a sentencing range of 210-262 months.

Third, on January 8, 2001, Braggs agreed to sell one ounce of crack cocaine to Hawkins. Braggs met Hawkins near a donut shop, and motioned for Hawkins to follow the car in which Braggs was riding with Jamal Baylis (Baylis) and Willy Stowers (Stowers). Baylis and Stowers provided surveillance for Braggs during the drug transaction. Braggs and his companions drove to an apartment complex, exited their car, and entered an apartment. Minutes later they returned to the cars and Braggs sold Hawkins over 27 grams of crack cocaine. When Braggs and his two companions drove away from the apartment complex, law enforcement initiated a stop. Before Braggs's vehicle pulled over, a passenger on the right side of the car threw a .45 caliber handgun out the window. Baylis was riding in the front passenger seat and later pled guilty to possessing the handgun. The proceeds from the drug deal were found in the possession of the driver, Stowers. Braggs was sitting in the right rear seat of the vehicle.

Braggs contends the district court failed to make the necessary finding that Braggs knew or could reasonably foresee the use of the weapon during the illegal drug sale. The government argues the enhancement could have been imposed for either the January 8 drug sale or the earlier January 4 shooting, because the shooting had occurred at a time between the other two drug offenses. Braggs counters saying the shooting cannot support the enhancement, because he was not committing a drug trafficking offense at that time. We need not decide whether the weapon possessed during the shooting constitutes conduct sufficient to support the section 2D1.1(b)(1) enhancement, because we conclude the district court did not err in determining the January 8, 2001 offense does.

## II. DISCUSSION

We review a district court's finding that a defendant possessed a firearm during a drug trafficking offense for clear error. United States v. Atkins, 250 F.3d 1203, 1213 (8th Cir. 2001). "Section 2D1.1(b)(1) of the Guidelines mandates a two-level enhancement if the government proves by a preponderance of the evidence that the

defendant possessed a weapon during the commission of a drug offense." United States v. Fairchild, 189 F.3d 769, 779 (8th Cir. 1999) (citation omitted). Therefore, first we must determine whether Braggs possessed a weapon during the January 8, 2001 drug offense.

For sentencing purposes, "[t]he government bears the burden of proving by a preponderance of the evidence that [a firearm] was present and that [it] was probable that it was connected with the drug charge." Atkins, 250 F.3d at 1213 (citation omitted) (alteration in original). The government need only establish that "a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." Id. at 1214 (internal quotation and citation omitted). Constructive possession is sufficient to support a section 2D1.1(b)(1) enhancement. Id. at 1213. Proof of ownership, use or actual possession is not necessary. Id. at 1213-14.

Braggs's possession may be constructive, if it was reasonably foreseeable that a co-conspirator would have possessed a weapon. The Sentencing Guidelines provide the following:

> Unless otherwise specified, . . . (ii) specific offense characteristics . . . shall be determined on the basis of the following:
>> (1) . . . (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

-4-

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a) (emphasis added).

"It is enough if the gun is 'found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place.'" United States v. Jones, 195 F.3d 379, 384 (8th Cir. 1999) (citation omitted). We have affirmed the imposition of a two-level enhancement under section 2D1.1(b)(1) based on evidence that the defendant was in the same vehicle where police recovered a handgun and methamphetamine manufacturing formulas. Atkins, 250 F.3d at 1214; see also United States v. Alatorre, 207 F.3d 1078, 1079 (8th Cir. 2000) (per curiam) (finding constructive possession where shotgun found in bedroom adjacent to a dresser containing drugs and a scale in a residence Alatorre shared with others). In Atkins, the defendant and the vehicle's owner had been in close association for several weeks and Atkins had been to the owner's residence when drugs were manufactured. Atkins, 250 F.3d at 1214.

The district court did not err in finding Braggs had constructive possession of a firearm for the following reasons: (1) there is no question the .45 caliber handgun was thrown from the vehicle in which Braggs was riding; (2) the police recovered drug proceeds on Stowers, the driver of the vehicle; (3) Hawkins testified at trial he knew Stowers was a drug dealer; (4) Hawkins knew Stowers had previously used a gun, because Stowers shot at Hawkins in October or November 2000; (5) Hawkins testified he had seen Braggs and Stowers together at other times; and (6) Hawkins, who the police had found with a firearm and crack cocaine, had several other drug dealings with Braggs before his arrest. The district court could reasonably infer from the evidence Stowers and Baylis were providing surveillance and protection for Braggs by using the gun during the drug deal.

The enhancement issue is not yet resolved. According to the commentary to section 2D1.1, "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. We have interpreted such language to mean "[t]he district court must impose the enhancement unless it finds it is 'clearly improbable that the weapon had a nexus to criminal activity.'" Fairchild, 189 F.3d at 779 (citation omitted).

A substantial nexus between the firearm and the criminal activity exists in this case. Law enforcement witnessed Hawkins engage in two illegal drug sales with Braggs. During the second transaction, Braggs was accompanied by Stowers and Baylis, who apparently provided surveillance assistance. The trio led Hawkins to, and entered, an apartment complex. Minutes later, while under audio and visual surveillance by law enforcement, Braggs sold Hawkins 27.33 grams of crack cocaine. Shortly after the exchange, officers followed, then stopped, the trio's vehicle. While officers were following the vehicle, a passenger threw a .45 caliber handgun out the right side window. Baylis later admitted to throwing the handgun out the window. Law enforcement found Stowers in possession of the money Hawkins paid to Braggs for the crack cocaine.

Based on this evidence, the district court did not clearly err in finding Braggs was involved in the "jointly undertaken activity" of perpetrating a drug trafficking offense with Stowers and Baylis. Further, the evidence supports the trafficking theory that Baylis was a lookout or guard for Braggs and that they were, along with Stowers, all part of the trafficking. See United States v. Linson, 276 F.3d 1017, 1019 (8th Cir. 2002) ("Firearms are the tools of the drug trade providing protection and intimidation."); United States v. Turpin, 920 F.2d 1377, 1387 (8th Cir. 1990) (noting weapons are tools of the trade for drug dealers and upholding two-level enhancement). Finally, the weapon was thrown from the vehicle where drug proceeds were found, the same vehicle used to commit the drug offense. Therefore, the district

court did not err in applying the enhancement, after finding the .45 caliber handgun was present to protect the illegal drugs, proceeds, and participants.

## III.   CONCLUSION

Because the district court did not commit clear error in assessing the two-level enhancement for possessing a dangerous weapon during the commission of a drug trafficking offense under section 2D1.1(b)(1), we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.