# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2674

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| | * | |
| Jose Luis Perez-Guerrero | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

_____

Submitted: February 10, 2003
Filed: July 8, 2003

_____

Before HANSEN,[1] Chief Judge, LOKEN and SMITH, Circuit Judges.

_____

HANSEN, Circuit Judge.

A jury found Jose Luis Perez-Guerrero ("Perez") guilty of conspiring to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and using a communication facility to facilitate the distribution

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

of methamphetamine, in violation of 21 U.S.C. § 843(b). The district court sentenced Perez to 300 months of imprisonment and 10 years of supervised release. Perez appeals the district court's order denying his motion to suppress evidence, and he appeals his sentence. For the reasons stated below, we affirm the judgment of the district court.

I.

This conspiracy to distribute methamphetamine in the central Iowa area is bookended by two events occurring approximately four years apart. The first occurred on or about July 1, 1996, when Deputy Sheriff Doug Lande pulled Perez over after Lande observed Perez's vehicle's muffler dragging on the ground. After checking Perez's identification, which falsely identified him as Gilberto Barrientos, Deputy Lande observed open containers of beer in the vehicle and a round of .45-caliber ammunition on the floorboard. His suspicion aroused, Lande called for backup and had Perez and three passengers exit the vehicle. After another deputy arrived, they searched the car, finding a .45 semiautomatic pistol under the rear seat. Perez was arrested for transporting a loaded firearm and for having a defective muffler.

During booking procedures, the deputies found on Perez's person a key attached to a green key fob that read "108." Perez stated that the key was from a hotel in Sioux City, but the deputies had found a matchbook for the Hawkeye Motel in Des Moines during the search of the vehicle and decided to investigate. They arrived at the Hawkeye Motel some time after noon and inquired about room 108. The motel manager showed them a receipt for the room made out to Gilberto Barrientos. The manager told the deputies that checkout was at 11:00 a.m. and that Barrientos had not extended his stay. The manager then consented to the deputies' request to inspect the room. After the county attorney told the deputies that they legally could enter the room with the consent of the manager, they entered and found under the bed a bag

2

containing methamphetamine. The deputies then obtained a warrant and seized the contraband. Perez admitted that he knew there were drugs in the room, but he denied that they belonged to him. Perez was convicted of and served time only for the weapons offense.

The final event in the timeline involves the controlled delivery of 774 grams of methamphetamine to Kelly Carmichael in Des Moines during the summer of 2000. David Reyes was present at Carmichael's residence during the delivery and signed for the package. Moments thereafter, the authorities raided the house and arrested Reyes. Carmichael was arrested later, and she agreed to cooperate with the government.

In the years between the two events described above, the conspiracy distributed a substantial amount of methamphetamine–approximately 30 pounds–in central Iowa. Perez fronted Carmichael, among others, pound quantities of methamphetamine. Carmichael stored the drugs at the residence of Mary Muir and distributed them in Des Moines. Randy Guerrero distributed drugs in the area and also collected the proceeds from area sales on Perez's behalf. Although the exact dates are unclear, at some point during this time, Perez was incarcerated again for another offense unrelated to this conspiracy. While incarcerated, he continued to direct the aforementioned people to distribute methamphetamine in central Iowa, and he continued to collect the proceeds from those sales. For example, the police search of Carmichael's residence conducted after the controlled delivery unearthed a letter from Perez sent while he was incarcerated regarding the collection of certain drug proceeds. In addition, Western Union records showed numerous wire transfers from Perez to his coconspirators and vice versa.

II.

Perez moved to suppress the methamphetamine seized during the motel search. The district court denied the motion on the ground that Perez lacked standing to

challenge the search.  On appeal, Perez argues that the district court erred in denying his motion to suppress.  We review the district court's findings of fact for clear error and its ultimate conclusion as to whether a Fourth Amendment violation occurred de novo.  See United States v. Mangine, 302 F.3d 819, 821 (8th Cir. 2002).

We conclude that the district court[2] did not err in holding that Perez lacked standing to challenge the search of the motel room and the subsequent seizure of the methamphetamine contained therein.  See United States v. Larson, 760 F.2d 852, 855 (8th Cir.) (concluding that defendant's legitimate expectation of privacy in hotel room had elapsed prior to police search where defendant had stayed in the room beyond the checkout time), cert. denied, 474 U.S. 849 (1985).  The fact that Perez's lawful arrest prevented him from returning to the Hawkeye Motel and either retrieving his goods before the rental agreement lapsed or extending his stay does not advance Perez's argument that his Fourth Amendment rights were violated.  In United States v. Reyes, 908 F.2d 281 (8th Cir. 1990), cert. denied, 499 U.S. 908 (1991), this court held that a defendant had no standing to contest a warrantless search of a rented locker that occurred after the rental agreement had expired even where the defendant was prevented from renewing the rental agreement because of his lawful arrest.  See id. at 286.

In Reyes, we relied on United States v. Croft, 429 F.2d 884 (10th Cir. 1970), which resolved the exact issue presented here.  In Croft, the defendant was arrested at a roadblock after an officer discovered that the defendant was driving without a license and with an open container of liquor in the front seat.  The officer found a motel key and suspicious looking checks in the glove compartment of the vehicle.  After obtaining the motel manager's consent, the officer searched the motel room after

---

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

the rental period had expired and found evidence relevant to the offense in that case. The court determined that the defendant had no standing to challenge the search of the room because his expectation of privacy was lost when the rental period expired. See id. at 887. The court rejected the defendant's argument that he lost the opportunity to renew the rental agreement when he was arrested, noting that it "was [the] defendant's own conduct that prevented his return to the motel." Id. Reyes and Croft convince us that the district court did not err in denying the motion to suppress.

Perez argues that the district court[3] erred in calculating his base offense level because it erroneously attributed to him the 774 grams of methamphetamine sent to Carmichael in the fall of 2000 while Perez was incarcerated. Perez argues that his conspiratorial liability ended when he was imprisoned. While it is generally true that "incarceration may constitute evidence of withdrawal from a conspiracy, it is hardly conclusive." United States v. Cohen, 516 F.2d 1358, 1364 (8th Cir. 1975). Here the trial testimony and other evidence, including the letter from Perez to Carmichael, showed that Perez had not withdrawn from the conspiracy; rather, he continued to direct others in the shipment and sale of methamphetamine and in the collection of the proceeds therefrom. Because Perez remained part of the conspiracy while incarcerated, he is responsible for all reasonably foreseeable conspiratorial acts. Accordingly, we cannot say that the district court erred in holding Perez responsible for the drugs seized in the 2000 shipment. See U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (2001) (stating that defendant is accountable "in the case of a jointly undertaken criminal activity [for] ... all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"); United States v. Zimmer, 299 F.3d 710, 720-21 (8th Cir. 2002) (holding defendant responsible for drug quantity distributed by coconspirators while defendant was incarcerated), cert. denied, 123 S. Ct. 952 (2003); United States v. Smith, 240 F.3d 732, 737 (8th Cir.

---

[3]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa, who presided at Perez's sentencing hearing.

2001) ("[I]n a drug conspiracy, the district court may consider amounts from drug transactions in which the defendant was not directly involved, provided that those other dealings were part of the same course of conduct or scheme." (quoting United States v. Brown, 148 F.3d 1003, 1008 (8th Cir. 1998), cert. denied, 525 U.S. 1169 (1999))). Moreover, even if the quantity seized from the intercepted mail package was erroneously attributed to Perez, the error was harmless. As the district court noted during sentencing, it did not include in calculating Perez's base offense level the approximately 30 pounds of methamphetamine that Perez had fronted to Carmichael during the course of the conspiracy.

Perez argues that the district court erred in applying a two-level sentencing enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon in connection with the conspiracy. Specifically, Perez argues that he should not be held responsible for the loaded .45-caliber semiautomatic pistol found underneath the backseat of his vehicle during the 1996 traffic stop. We review the district court's factual finding that Perez possessed a firearm within the meaning of § 2D1.1(b)(1) for clear error. See United States v. Hayes, 15 F.3d 125, 127 (8th Cir.), cert. denied, 512 U.S. 1225 (1994).

"For this provision to apply, the government must prove by a preponderance of the evidence that a weapon was present," United States v. Thompson, 210 F.3d 855, 862 (8th Cir. 2000) (internal marks omitted), cert. denied, 532 U.S. 996 (2001), and that it was not "clearly improbable" that the weapon had a nexus with this conspiracy, see U.S.S.G. § 2D1.1, comment. (n.2). It is not disputed that the weapon was present. The only question presented is whether the district court erred in concluding that it was not clearly improbable that the .45 had a nexus with this conspiracy. "A nexus exists where there is a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant." Thompson, 210 F.3d at 862 (internal marks omitted). It is not necessary for the government to establish actual possession of the weapon or even proof of use. See United States v. Atkins,

250 F.3d 1203, 1213 (8th Cir. 2001). In addition, the government need not establish that the defendant owned the weapon or the premises in which it was found because "[c]onstructive possession is sufficient to support a section 2D1.1(b)(1) enhancement." United States v. Braggs, 317 F.3d 901, 904 (8th Cir. 2003); see also Atkins, 250 F.3d at 1213-14. Thus, Perez's claim that he did not own the .45 pistol found in the car has little to no bearing on whether the district court erred in imposing the two-level enhancement pursuant to section 2D1.1(b)(1).

We have previously affirmed the application of the section 2D1.1(b)(1) enhancement where the defendant was in the same vehicle used to facilitate drug transactions. See Braggs, 317 F.3d at 905 (concluding that the district court did not err in finding constructive possession of firearm where defendant was riding in vehicle from which weapon was thrown); Atkins, 250 F.3d at 1214 (holding that the district court did not err in imposing enhancement where conspirator was in vehicle where weapon was recovered). In light of the above cases, we cannot conclude that the district court clearly erred. At the time of the traffic stop during which the weapon was recovered, Perez possessed the key to room 108 of the Hawkeye Motel. A subsequent search of that room uncovered a substantial quantity of methamphetamine. Thus, at the time of the stop, Perez had constructive possession of both the drugs and the weapon. In addition, a canine unit deployed during the stop alerted to the rear taillight area of Perez's vehicle, indicating that drugs previously had been stored there. The inference generated from the dog's positive alert to the vehicle–that it was used to transport contraband–is supported by the fact that the trunk and rear wheel area of the car had been modified to transport contraband. A witness also identified Perez's car as the same car used to deliver methamphetamine to his garage during the course of the conspiracy. Generally, the weapon enhancement is applicable "if the gun is found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place." Braggs, 317 F.3d at 904. We therefore conclude that the district court did not err in applying the section 2D1.1(b)(1) enhancement.

7

Finally, we reject Perez's argument that the district court erred in using his prior conviction in California for aiding and abetting the importation of marijuana to calculate his criminal history category. In determining the defendant's criminal history category, the district court is to consider "any sentence previously imposed ... for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Conduct not part of the instant offense is conduct other than "relevant conduct" as defined in U.S.S.G. § 1B1.3. See U.S.S.G. § 4A1.2, comment. (n.1). "Relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(A) includes "all acts ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Because the California conviction lacked geographical proximity to the conspiracy at issue here, involved a different drug than the one whose distribution was the object of the conspiracy, and involved different coconspirators, we conclude that the district court did not err in treating the California conviction as a separate and distinct offense and by using the conviction to determine Perez's criminal history category. See United States v. Davidson, 195 F.3d 402, 409 (8th Cir. 1999), cert. denied, 528 U.S. 1180 (2000) (listing these as relevant factors in the determination).

## III.

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

8