# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-2834

_____

United States of America,

Appellee,

v.

Miguel R. Mendoza, Jr., also
known as Michael Mendoza,

Appellant.

_____

No. 02-3384

_____

United States of America,

Appellee,

v.

Michael R. Clinton,

Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*   Appeals from the United States
\*   District Court for the
\*   Western District of Missouri.
\*
\*
\*
\*   [PUBLISHED]
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

_____

Submitted: April 17, 2003
Filed: September 2, 2003

_____

Before LOKEN, Chief Judge, HANSEN and RILEY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Miguel R. Mendoza, Jr. and Michael R. Clinton were each charged in various counts contained in a ten-count superceding indictment charging drug conspiracy, drug distribution, and possession of a firearm in connection with drug trafficking. Mendoza proceeded to trial and was convicted of the charges against him. The district court[1] sentenced Mendoza to 360 months imprisonment. Clinton pleaded guilty to the conspiracy charge and the firearm charge and received consecutive 121-month and 60-month sentences. In these consolidated appeals, Mendoza raises evidentiary and sentencing issues. Although Clinton pleaded guilty to the firearm charge, he appeals his conviction on that charge, arguing that his conduct did not violate the statute. We affirm Mendoza's convictions and sentences and dismiss Clinton's appeal.

I.

The South Central Missouri Drug Task Force began investigating reports about several Hispanic men selling large quantities of methamphetamine in the Hebron River Access area of the Mark Twain National Forest in May 2001. Paul Yeager, a confidential informant, identified Clinton as a distributor for a person Yeager identified as Mendoza. Through Yeager, Task Force Officer (TFO) Stanley Horton contacted and befriended Clinton and made several methamphetamine purchases from Clinton over the course of the summer.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

TFO Horton spent time at the campground and eventually made two purchases directly from Mendoza. During one transaction, Mendoza warned Horton that several men standing nearby, one of whom was holding a rifle that Mendoza identified as a 9 mm, were watching them and that if something went wrong, they would take care of him.

Mendoza was driven to and from various meetings with TFO Horton by Kella Dobbs, also charged in the indictment. During the transactions, Dobbs performed various tasks at Mendoza's direction, including measuring and weighing the methamphetamine. Dobbs also set up at least one of the transactions between TFO Horton and Mendoza. Dobbs testified pursuant to a plea agreement at Mendoza's trial that he was hired by Mendoza to drive Mendoza around and to watch his back. Dobbs carried a shotgun in the cab of his truck at all times. Dobbs also testified that Clinton sold only small amounts of drugs until Mendoza arrived in the area.

Larry Agee, who was not charged in the indictment, also testified pursuant to an agreement with the government. Agee testified that Clinton introduced him to Mendoza in the spring of 2001 and that he was eventually hired by Mendoza to drive Mendoza around, collect money, and deliver drugs. In June 2001, Agee flew to California and picked up methamphetamine for Mendoza. Agee received one-half ounce of the methamphetamine in exchange for transporting the methamphetamine for Mendoza. Agee described Mendoza as the boss and Clinton as the dealer.

Special Agent Dennis Deason also purchased methamphetamine from Clinton and observed Dickie Clouse interacting with Mendoza. Clouse told Agent Deason that he met Mendoza in Wichita, Kansas and brought him to the Hebron River Access area to set up his drug operation. Clouse described himself as the local guy who told Mendoza who to sell to. Clouse told Agent Deason that he made between $3,000 and $5,000 per month brokering drug deals.

Conspiracy charges related to the investigation were brought against Mendoza, Clinton, Dobbs, and Clouse, charging a conspiracy to distribute methamphetamine between May and August 2001. Distribution charges were also brought against Clinton, Mendoza, and Dobbs related to specific drug transactions. Clinton was charged with carrying a firearm in relation to, and possessing a firearm in furtherance of, a drug-trafficking conspiracy. Clinton and Dobbs entered plea agreements and Mendoza proceeded to trial. At Mendoza's trial, the government introduced evidence of two prior convictions against Mendoza in the state of Kansas for possession of methamphetamine and possession of methamphetamine by a dealer without a tax stamp. The jury convicted Mendoza of the five counts with which he was charged. The sentencing court enhanced Mendoza's base offense level by four levels for being a leader or organizer and two levels for possession of a weapon, resulting in an offense level of 38. Based on his criminal history category of VI, Mendoza was subject to a sentencing range of 360 months to life and received a 360-month sentence on each of the five counts, to be served concurrently.

On appeal, Mendoza argues that the district court erred in admitting evidence of his prior convictions, violated 21 U.S.C. § 851 (2000) by failing to hold a hearing on his objections to using the prior convictions to enhance his sentence, and erred in increasing his offense level under United States Sentencing Guideline Manual (USSG) §§ 3B1.1(a) and 2D1.1(b)(1) (2001).

Pursuant to his plea agreement, Clinton received a 121-month sentence on the conspiracy charge and a 60-month sentence on the firearm charge, to be served consecutively. Clinton's only argument on appeal is that his sentence on the firearm charge should be vacated because his conduct did not constitute a violation of 18 U.S.C. § 924(c) as interpreted by the Supreme Court.

4

## II. Mendoza

### A. Prior Convictions

The district court allowed the government to introduce a certified copy of Mendoza's 1998 Kansas convictions for possession of methamphetamine and possession of methamphetamine by a dealer without a tax stamp, which the government offered to show Mendoza's knowledge, intent, and motive. See Fed. R. Evid. 404(b). We review the district court's admission of evidence under Rule 404(b) for an abuse of discretion and "will reverse only when such evidence clearly had no bearing on the case and was introduced solely to prove the defendant's propensity to commit criminal acts." United States v. Frazier, 280 F.3d 835, 847 (8th Cir.) (internal quotations omitted), cert. denied, 535 U.S. 1107 (2002).

Rule 404 prohibits introduction of prior convictions to show a defendant's character, but allows such evidence to prove, among other things, a defendant's motive, intent, opportunity, and knowledge. Fed. R. Evid. 404(b). Evidence of a prior criminal conviction is admissible only if it is 1) relevant to a material issue, 2) similar in kind and not too remote in time to the charged crime, 3) supported by sufficient evidence, and 4) such that its probative value is not substantially outweighed by its potential prejudice. Frazier, 280 F.3d at 847. Mendoza argues that evidence of the convictions was unnecessary and cumulative to other evidence that was introduced and therefore more prejudicial than probative. Prior to trial, Mendoza informed the court that he might rely on the defenses of lack of knowledge and specific intent. Mendoza claimed that he was just along for the ride and did not even know how much an ounce of methamphetamine was. Intent and knowledge of drug trafficking were very much at issue during the trial. Evidence of a prior conviction for possession of methamphetamine is probative of a defendant's knowledge and intent concerning current charges of conspiracy to distribute that same drug, especially where the defendant claims he lacked knowledge or intent to distribute the

5

drug. See id.; United States v. Bryson, 110 F.3d 575, 583 (8th Cir. 1997). The Kansas convictions were also relatively close in time, three years, making their relevancy to the issues of intent and knowledge greater. See United States v. Ruiz-Estrada, 312 F.3d 398, 403 (8th Cir. 2002) (three-year-old conviction admissible), cert. denied, 123 S. Ct. 1766 (2003); Frazier, 280 F.3d at 847 (five-year-old conviction admissible). Even though the government's case appears to us, in hindsight, to be strong without the prior convictions, we cannot say that the district court abused its discretion in admitting the evidence, particularly in light of the claims Mendoza made at trial and the facts that the prior convictions involved the same drug and were only three years old.

Mendoza also argues that his prior convictions should not have been used to enhance his sentence because the district court violated 21 U.S.C. § 851 by failing to hold the required hearing to determine the validity of the prior convictions. Section 851 requires the government to file an information when it intends to seek an increase in a defendant's statutory sentence based on a prior conviction. 21 U.S.C. § 851(a)(1); see also United States v. McMurray, 20 F.3d 831, 833 (8th Cir. 1994). The defendant may file a response challenging the validity of the prior conviction, in which case the court "shall" hold a hearing to address any issues raised. 21 U.S.C. § 851(c)(1). The government filed the required information prior to Mendoza's trial and Mendoza filed an objection, claiming that the Kansas convictions were invalid because the Kansas state court allegedly empaneled a court staff employee on the jury when an inadequate number of jurors appeared for service. Despite Mendoza's response, the sentencing court did not hold a hearing, finding that a collateral attack on a prior conviction was not allowed for sentencing purposes.

Section 851's requirements pertain to enhancements to a defendant's statutory penalty range, not to Sentencing Guideline enhancements. McMurray, 20 F.3d at 833. Thus, the mandates of § 851 are irrelevant when a defendant's prior conviction is used to determine his criminal history category for Guidelines purposes as long as

the Guidelines sentence imposed is within the unenhanced statutory range. <u>Id.</u> Mendoza was charged with violating 21 U.S.C. § 841(a)(1) & (b)(1)(A). His prior Kansas convictions enhanced his statutory sentencing range from ten years to life to twenty years to life. 21 U.S.C. § 841(b)(1)(A). The prior convictions also formed the basis for four of his fifteen criminal history points and gave him a criminal history category of VI. (PSR ¶¶ 59, 63.) Without those four criminal history points, Mendoza would have had a criminal history category of V. An offense level of 38 combined with either a criminal history category of V or VI results in the same Guideline sentencing range of 360 months to life, requiring Mendoza to be sentenced above both the unenhanced and the enhanced statutory minimum sentences. Thus, inclusion of the prior conviction for purposes of calculating Mendoza's criminal history category for Guideline purposes did not result in sentencing him outside the unenhanced statutory range of ten years to life and the district court did not violate § 851 by failing to hold a hearing.

Mendoza concedes this to be the case, but argues that if he is correct that the district court erred in adding six levels to his base offense level (four levels under USSG § 3B1.1(a) and two levels under § 2D1.1(a)(3)), his offense level should have been only 32, which, when combined with a criminal history category of V, would have resulted in a sentencing range of 188-235 months. As discussed below, the district court did not err in enhancing Mendoza's sentence by six levels and therefore did not err in failing to hold a § 851 hearing.

B.      USSG § 3B1.1(a) Enhancement for Being a Leader or Organizer

The district court assessed a four-level enhancement to Mendoza's base offense level because it found that Mendoza was a leader or organizer of a criminal activity involving at least five participants. <u>See</u> USSG § 3B1.1(a). We review the district court's factual findings supporting its application of the Sentencing Guidelines for

7

clear error.  United States v. Zimmer, 299 F.3d 710, 719 (8th Cir. 2002), cert. denied, 123 S. Ct. 952 (2003).

The five participants identified by the district court were Mendoza, Clinton, Dobbs, Clouse, and Agee.  Mendoza argues that Agee should not count as a participant because he was not charged in the indictment.  "Persons who are not indicted or tried, but who are nonetheless criminally responsible for defendant's crime, are 'participants' under § 3B1.1."  United States v. Brockman, 183 F.3d 891, 899 (8th Cir. 1999) (citing § 3B1.1, comment. (n.1) and United States v. Freeman, 30 F.3d 1040, 1042 (8th Cir.1994)), cert. denied, 528 U.S. 1080 (2000).  Agee testified that he flew to California to pick up methamphetamine and delivered it to Mendoza in Missouri.  He also testified that Mendoza hired him to drive Mendoza around, to collect money, and to deliver drugs.  These activities furthered the conspiracy and Agee was clearly a participant for purposes of the enhancement.

Mendoza also argues that he was neither a leader nor an organizer because the drug trafficking had been going on long before he arrived in the Hebron River Access area in May 2001.  Regardless of when other participants began selling drugs in the area, the most important relevant conduct for Mendoza is that charged in the indictment–May to August 2001.  Mendoza was present for the full length of time charged in the conspiracy.  Further, Mendoza need not have been the original organizer.  He is subject to the enhancement if he directed at least one other participant.  See United States v. Eis, 322 F.3d 1023, 1025 (8th Cir. 2003) (per curiam).  Relevant factors to be considered include "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning and organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."  Brockman, 183 F.3d at 899 (citing USSG § 3B1.1, comment. (n.4)).

8

The record supports the court's conclusion that Mendoza was a leader or organizer. Mendoza hired Dobbs to drive him around and watch his back, and Dobbs weighed and packaged drugs at Mendoza's direction. Further, Mendoza hired Agee to drive Mendoza around, collect money, and deliver drugs. Agee went to California at Mendoza's behest to transport methamphetamine back to Missouri for Mendoza to sell. Several witnesses characterized Mendoza as the boss and Clinton as the dealer. There was more than sufficient evidence to support the court's application of the four-level role in the offense enhancement.

C.     USSG § 2D1.1(b)(1) Enhancement for Possession of a Dangerous Weapon

Section 2D1.1 authorizes a two-level enhancement to a drug-trafficking sentence "[i]f a dangerous weapon (including a firearm) was possessed" by the defendant. USSG § 2D1.1(b)(1). The weapon enhancement allowed by § 2D1.1(b)(1) "reflects the increased danger of violence when drug traffickers possess weapons." USSG § 2D1.1, comment. (n.3). "'The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.'" United States v. Braggs, 317 F.3d 901, 905 (8th Cir. 2003) (quoting USSG § 2D1.1 comment. (n.3)). "The government has the burden to show by a preponderance of the evidence both that the weapon was possessed by the defendant and that it was not clearly improbable that the weapon was connected with the offense." United States v. Harris, 310 F.3d 1105, 1112 (8th Cir. 2002), cert. denied, 123 S. Ct. 2121 (2003).

The government contends that two different weapons sustain the court's finding that a weapon was possessed in relation to the conspiracy: Dobbs' shotgun that he carried in his truck and the 9 mm rifle held by one of the group of men who Mendoza told TFO Horton would take care of him if something went wrong. Mendoza argues that there was no evidence that he ever possessed a weapon or that Dobbs' shotgun

9

was used as part of the conspiracy. He further argues that TFO Horton testified that the rifle was an air rifle, not a 9mm rifle.

Mendoza's argument that he did not personally possess a firearm is unavailing. Constructive possession suffices "if it is reasonably foreseeable that a co-conspirator would have possessed a weapon." Braggs, 317 F.3d at 904; see also United States v. Atkins, 250 F.3d 1203, 1214 (8th Cir. 2001) (affirming enhancement where defendant was present in co-conspirator's vehicle where gun was found). Both weapons were used for Mendoza's protection and were sufficiently connected to Mendoza's drug trafficking to support the enhancement. Dobbs testified that he was hired to watch Mendoza's back, and Dobbs drove Mendoza around in his truck with the shotgun visible in the cab of the truck. Further, Mendoza told TFO Horton that the man holding the rifle was watching the transaction and would take care of him if anything happened. The court's finding that the weapons were used for Mendoza's protection is not clearly erroneous. See Braggs, 317 F.3d at 904 (holding that enhancement was appropriate where evidence supported inference that co-conspirator, who admitted throwing gun from vehicle in which defendant was arrested, was providing protection for defendant). Although TFO Horton testified that he thought the rifle was an air rifle, Mendoza told Horton that it was a 9mm rifle. The district court's conclusion that the rifle was a dangerous weapon is not clearly erroneous. These facts sufficiently tie both weapons to the drug trafficking crimes Mendoza was found guilty of committing and support the two-level enhancement for possession of a dangerous weapon.

## III. Clinton

Clinton argues on appeal that his sentence for the 18 U.S.C. § 924(c) conviction should be vacated because he did not "actively employ" the firearm as required by the Supreme Court in Bailey v. United States, 516 U.S. 137, 150 (1995) (holding that "use" of a firearm for purposes of § 924 required active employment).

10

The government contends that this issue is unreviewable on appeal because Clinton expressly waived his right to appeal his conviction in his plea agreement. Clinton agreed to plead guilty to two of the seven counts brought against him in exchange for which the government agreed to dismiss the remaining five charges. The plea agreement expressly reserved the right of both parties to appeal only those sentencing issues that had not been agreed upon or were not specifically addressed in the plea agreement. Clinton "expressly waive[d] the right to appeal or collaterally attack by post-conviction motion all other issues." (Appellee's App. at 12 (Plea Agreement at ¶ 12).) Clinton does not address the government's position on appeal that he has waived his right to appeal.

A defendant's right to appeal his conviction or sentence is purely a statutory right. "It is well settled that a procedural right, whether constitutionally derived or grounded in statute, may be waived by a criminal defendant." United States v. Michelsen, 141 F.3d 867, 871 (8th Cir.), cert. denied, 525 U.S. 942 (1998). Appeal waivers are important tools in the plea bargaining process because they "preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." DeRoo v. United States, 223 F.3d 919, 923 (8th Cir. 2000). Accordingly, appeal waivers are generally binding and we will not review a waived issue unless the plea agreement was not entered knowingly and voluntarily. See id.; Michelsen, 141 F.3d at 871-72.

Before accepting Clinton's guilty plea, the court expressly addressed Clinton's understanding that he was giving up his right to appeal all issues other than sentencing issues not agreed upon or specifically addressed in the plea agreement. (Plea. Tr. at 9.) Clinton does not argue, and we find no indication, that Clinton entered the plea agreement other than knowingly and voluntarily. Clinton's argument on appeal does not raise a sentencing issue that was reserved in the plea agreement. Rather, the only issue raised is an attack on the factual basis that supports his guilty

plea and the underlying conviction. We therefore enforce the plea agreement as written and dismiss Clinton's appeal.

## IV.

We affirm the judgment of the district court with respect to Mendoza's convictions and sentences, and we dismiss Clinton's appeal.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.