# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1538

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Gilberto Bolivar-Diaz, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 2009
Filed: February 10, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

On appeal, Gilberto Bolivar-Diaz challenges the reasonableness of his forty-one month prison sentence imposed by the district court[1] following his guilty plea to illegal reentry under 8 U.S.C. § 1326(a) and (b)(2).  We affirm.

_____

[1]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

## I.   BACKGROUND

On March 11, 2008, Bolivar-Diaz was indicted for illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). This indictment followed a lifelong history of illegal entry and criminal activity resulting in various convictions and jail time for Bolivar-Diaz.

According to Bolivar-Diaz he was born in Guanjuato, Mexico, on October 21, 1953. He came to the United States at the age of eleven for reasons unclear in the Presentence Investigation Report (PSR) and sentencing transcript. Indeed, much of Bolivar-Diaz's actual history is unclear because he has provided inconsistent information throughout the years to government officials. What is clear, however, is that Bolivar-Diaz is an illegal alien who has been deported at least twice. And, his criminal history is voluminous. The PSR identifies eleven convictions for crimes ranging from unlawful use of a weapon and distribution of heroin, to theft and failure to drive in a single lane. The PSR additionally notes seven other arrests for various crimes ranging from disorderly conduct to possession of marijuana, none of which were included in the criminal history computation for sentencing purposes. This litany gives the court a clear picture of Bolivar-Diaz's consistent pattern and practice of illegal behavior.

Bolivar-Diaz pled guilty to the instant offense and requested that the district court impose a sentence between twelve and eighteen months–a great reduction from the suggested advisory guidelines range of forty-one to fifty-one months. The variance, argues Bolivar-Diaz, is warranted based upon the following: (1) he is in his fifties; (2) he has a daughter and grandchild in the United States (although we note that the PSR indicates Bolivar-Diaz reported he had not seen his daughter in four years); (3) he has never lived as an adult in Mexico (although he is a citizen of that country) and thus starting his life in a foreign place once deported following imprisonment, would be difficult so a lesser sentence would jumpstart that process;

(4) he has numerous health problems, including anxiety, thyroid problems, and hepatitis (for which he reported to be on no medication); (5) he spent many months in custody prior to his sentencing; (6) given the availability of "fast track" programs in other areas, a lower sentence lessens disparity, and, finally; (7) because Bolivar-Diaz is an illegal alien he will not be able to avail himself of certain prison benefits such as assignment to minimum security prisons, vocational rehabilitation, and drug treatment. These reasons, argues Bolivar-Diaz, account for several of the 18 U.S.C. § 3553(a) factors including the personal characteristics of the defendant, sentencing disparity, promotion of respect for the law, and adequate criminal deterrence.

In support of a sentence within the advisory guidelines range, the government pointed out at sentencing, and again on appeal, Bolivar-Diaz's extensive history of weapons and drug offenses. Also noted was the fact that only a very small minority of districts offer the "fast track" program and that if the existence of those programs were used as a basis for variances, it would only increase sentencing disparities. Addressing Bolivar-Diaz's health, the government argued that imprisonment might better serve Bolivar-Diaz's medical needs given the risk of mediocre care in Mexico. And, finally, based upon his history, the government claimed no doubt whatsoever that upon release and ultimate deportation, Bolivar-Diaz would return to the United States to continue the criminal activity to which he has become accustomed. Thus, the government claimed that a longer sentence was warranted to provide just punishment and protect the public from further crimes by Bolivar-Diaz. Notably, the latter point seems to have been the driving force behind the court's ultimate sentence calculation in this case, and remains the thrust of the government's argument on appeal.

## II. DISCUSSION

Our task is to determine whether the district court abused its discretion by imposing a sentence that is substantively unreasonable. United States v. Linderman,

587 F.3d 896, 900 (8th Cir. 2009). Bolivar-Diaz challenges the substantive reasonableness of his sentence, arguing that it is greater than necessary to accomplish the sentencing purposes of § 3553(a). Contrary to the government's position regarding our standard of review, Bolivar-Diaz's failure to object at the sentencing hearing does not limit our review of the substantive reasonableness of the sentence to plain error. Id. at 900-01. "A defendant need not object to preserve an attack on the length of the sentence imposed if he alleges only that the District Court erred in weighing the § 3553(a) factors." United States v. Miller, 557 F.3d 910, 916 (8th Cir. 2009). A sentence that is within the applicable guidelines range may be presumed to be substantively reasonable. United States v. Ruelas-Mendez, 556 F.3d 655, 657 (8th Cir. 2009); United States v. Garcia, 512 F.3d 1004, 1006 (8th Cir. 2008).

Our review of the district court's sentencing colloquy reveals that the district court, in light of the appropriate § 3553(a) factors, considered each factor Bolivar-Diaz raised in support of the suggested variance. The court did not, however, find Bolivar-Diaz's suggested mitigating factors persuasive in its overall § 3553(a) analysis. Indeed, the clarity of Bolivar-Diaz's likelihood of recidivism was just too great. We are satisfied that the district court considered and gave the appropriate weight to each of the relevant § 3553(a) factors in determining Bolivar-Diaz's sentence. Because Bolivar-Diaz's sentence came within the applicable guidelines range and is amply supported by the record, we conclude that the sentence is not substantively unreasonable and that the district court did not abuse its discretion.

## III.  CONCLUSION

Accordingly, for the reasons stated herein, we affirm.

_____