# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3862

_____

United States

*Appellee*

v.

Jesus Ordaz

*Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas

_____

Submitted: June 10, 2013
Filed: June 17, 2013
[Unpublished]

_____

Before GRUENDER, ARNOLD, and BENTON, Circuit Judges.

_____

PER CURIAM.

After Jesus Ordaz pleaded guilty to two counts of distributing methamphetamine, *see* 18 U.S.C. § 841(a)(1), the district court[1] calculated his base

_____

[1] The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas.

offense level as 36, *see* U.S.S.G. § 2D1.1(c), and added two two-level enhancements: one for possessing a firearm in connection with the drug-trafficking offense, *see* U.S.S.G. § 2D1.1(b)(1), and another for being an organizer, leader, manager, or supervisor in a criminal activity, *see* U.S.S.G. § 3B1.1(c). After making several other adjustments, the court arrived finally at a total offense level of 39, which gave rise to a guidelines range of 360 to 480 months' incarceration on each count; the court then sentenced Mr. Ordaz to 235 months' imprisonment on each count to run concurrently. Mr. Ordaz appeals, contending that his base offense level was incorrectly set because the quantity of methamphetamine attributed to him was too high, that he should not have been assessed the enhancements alluded to, and that his ultimate sentence was unreasonable. We affirm.

We review the district court's drug-quantity finding for clear error. *See United States v. Young*, 689 F.3d 941, 945 (8th Cir. 2012), *cert. denied*, 133 S. Ct. 902 & 1375 (2013). Mr. Ordaz admitted in his plea agreement that he sold one ounce (28.3495 grams) of a methamphetamine mixture during each of the two controlled buys to which he pleaded guilty. At sentencing, the court attributed another 180 ounces of methamphetamine to Mr. Ordaz, an amount which he disputes on appeal. The presentence investigation report arrived at the 180-ounce quantity based on the statement of co-defendant Daniel Lawson that he had purchased two ounces of methamphetamine from Mr. Ordaz every day for three months. On appeal, Mr. Ordaz describes Mr. Lawson's statement as "unsubstantiated," but he neither offered evidence to the contrary nor objected to the drug-quantity finding in the PSR, and thus the court was free to accept it as true, *see United States v. Rodriguez*, 711 F.3d 928, 939-40 (8th Cir. 2013). The court, moreover, heard testimony from the investigating officer that Mr. Lawson had indeed reported that Mr. Ordaz sold him two ounces per day for three months, that all three co-conspirators had described Mr. Ordaz as their methamphetamine "supplier," and that the officer had heard from other sources who had purchased methamphetamine from Mr. Ordaz. Based on this

record, we see no merit to Mr. Ordaz's assertion that the court clearly erred in determining drug quantity.

Mr. Ordaz also contends that he should not have been assessed a two-level enhancement for being an organizer, leader, manager, or supervisor in a criminal activity, *see* U.S.S.G. § 3B1.1(c). We review the district court's finding on this issue for clear error, *United States v. Johnson*, 619 F.3d 910, 921 (8th Cir. 2010), and we broadly construe the terms "organizer," "leader,""manager," and "supervisor," as set out in U.S.S.G. § 3B1.1, *see United States v. De Oliveira*, 623 F.3d 593, 599 (8th Cir. 2010). The evidence we have already recited supports a finding that Mr. Ordaz did not simply "front" the drugs to his co-defendants, *see United States v. Cole*, 657 F.3d 685, 687 (8th Cir. 2011) (per curiam), but was instead a significant supplier for a drug-trafficking organization and thus a "key link" in the drug distribution chain, *see Johnson*, 619 F.3d at 921-22. We therefore conclude that the district court did not err in applying the § 3B1.1 enhancement to Mr. Ordaz.

The district court's finding that Mr. Ordaz "possessed" a firearm in connection with the offense, *see* U.S.S.G. § 2D1.1(b)(1), was also not clearly erroneous, *see United States v. Braggs*, 317 F.3d 901, 904 (8th Cir. 2003). The enhancement applies if a "weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.11). Therefore, to meet its burden, the government must prove two things by a preponderance of the evidence: that a weapon was present and that it was not clearly improbable that it was connected with the offense. *United States v. Brown*, 148 F.3d 1003, 1008-09 (8th Cir 1998), *cert. denied*, 525 U.S. 1169 (1999); *see also United States v. Peroceski*, 520 F.3d 886, 888-89 (8th Cir. 2008), *cert. denied*, 555 U.S. 912 (2008). The government proves a "connection" between the firearm and the offense "by showing the existence of a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant." *United States v. Newton*, 184 F.3d 955, 958 (8th Cir. 1999). In fact, "[e]vidence that the weapon was found in the same location

-3-

as drugs or drug paraphernalia usually suffices." *United States v. Cave*, 293 F.3d 1077, 1079 (8th Cir. 2002) (quoting *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000)).

Mr. Ordaz maintains that a firearm the police found at his residence – after he told them that it was there – was insufficient to support the firearm possession enhancement: The weapon was found approximately two months after he was last known to have participated in a drug transaction, and he asserts that this temporal gap means that the government could not have proven that the particular weapon was present during any of his drug transactions. But Mr. Ordaz had conducted drug transactions from the residence, *see Cave*, 293 F.3d at 1079, and the court had substantial other evidence on which it relied in imposing the enhancement. The PSR, to which Mr. Ordaz did not object, relayed an informant's statement that, during the time that Mr. Ordaz was distributing methamphetamine, Mr. Ordaz went into a bedroom of the residence, pulled a pistol out from under a pillow, and showed it to the informant. In addition, Mr. Ordaz's co-defendants and a confidential informant reported providing him with firearms in exchange for drugs. *See United States v. Martinez*, 557 F.3d 597, 599-600 (8th Cir. 2009), *cert. denied*, 558 U.S. 926 (2009); *see also United States v. Washington*, 528 F.3d 573, 574 (8th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 1020 (2008). We discern no clear error in the court's finding that Mr. Ordaz possessed a firearm in connection with the offense.

Mr. Ordaz challenges the reasonableness of his ultimate sentence on several grounds: He asserts that the district court, in fixing his sentence, gave excessive weight to his criminal history, *see* 18 U.S.C. § 3553(a)(1), and insufficient weight to avoiding unwarranted disparities between co-defendants' sentences, *see* 18 U.S.C. § 3553(a)(6), and failed to consider all of the sentencing goals set out in 18 U.S.C. § 3553(a) by ignoring some of his mitigating circumstances. Mr. Ordaz did not raise any of these issues in the district court. We thus review for plain error his contention that the court erred by failing to consider the relevant factors (a procedural issue), *see United States v. Nissen*, 666 F.3d 486, 490 (8th Cir. 2012), but apply an abuse-of-

discretion standard to his challenges to how the district court weighed relevant factors (challenges to substantive unreasonableness), which need not be raised below, *see United States v. Bolivar-Diaz*, 594 F.3d 1003, 1005 (8th Cir. 2010).

We observe, first, that Mr. Ordaz received quite a significant downward variance, and "it is nearly inconceivable that the court abused its discretion in not varying downward still further," *see United States v. Moore*, 581 F.3d 681, 684 (8th Cir. 2009) (per curiam) (internal quotation marks and citation omitted). District courts have "wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009). We see no abuse of discretion in the weight that the court assigned Mr. Ordaz's criminal history in fixing his sentence, *see* 18 U.S.C. § 3553(a)(1); in fact, the court stated that it thought that his criminal history was "somewhat overstated" and included that consideration as one of its reasons for granting a downward variance. The court also explained that it had varied downward significantly from the guideline range, in large part, to avoid an "unwarranted sentencing disparity in this case," and we have no reason to believe that the district court -- which had sentenced the co-defendants and found it "apparent" that Mr. Ordaz was their "key supplier" -- should have varied further downward. Nor has Mr. Ordaz established that the court plainly erred, or erred at all, by failing to consider his mitigating circumstances. He filed a sentencing memorandum setting out those circumstances, and he has made no attempt to rebut the presumption that the sentencing court considered the matters presented to it, *see United States v. Grimes*, 702 F.3d 460, 471 (8th Cir. 2012). For the reasons stated, we discern no unreasonableness in the sentence that the district court imposed.

Affirmed.

_____