# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1545

_____

United States of America

*Plaintiff - Appellee*

v.

Jeremy Michael Graham

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: February 11, 2019
Filed: July 3, 2019
[Unpublished]

_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

_____

PER CURIAM.

Jeremy Michael Graham pleaded guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and to being a drug user in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(3)

and 924(a)(2). In calculating Graham's sentence, the district court[1] included a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with a conspiracy to traffic drugs. The court then imposed concurrent sentences of 240 months for the conspiracy charge and 120 months for the firearm charge. Graham challenges the application of the two-level enhancement; he also challenges his 240–month sentence as substantively unreasonable.

## I. *Background*

On November 29, 2016, an undercover agent contacted Graham to purchase one ounce of methamphetamine. Graham requested the agent pay him $950 up front. As collateral, Graham offered the agent the title to three of his cars and an extra 1/8th of an ounce of methamphetamine. The agent met Graham at his house, where Graham also offered a .22 caliber handgun in his possession as collateral. The agent did not buy any drugs from Graham because Graham did not have any to sell at the time. However, the agent did buy Graham's .22 caliber handgun for $250.

Graham discussed firearms with the agent on at least two later occasions. On February 23, 2017, the agent purchased 14.16 grams of methamphetamine from Graham in a parking garage. During that transaction, Graham mentioned having a defective .25 caliber pistol for sale. He also stated he had access to shotguns. Then, on April 4, Graham sold the agent a submachine gun and a rifle for $1,600. After that sale, the two drove to a house to purchase methamphetamine from a third party. The agent paid Graham $2,000, and Graham purchased 55.25 grams of methamphetamine from the third party. The police arrested Graham later that day, and Graham admitted to buying and selling methamphetamine.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Graham was charged with conspiracy to distribute methamphetamine and with being a drug user in possession of a firearm, and he subsequently pleaded guilty to those charges. At sentencing, the district court calculated a total offense level of 37, including a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with a conspiracy to traffic drugs. The court mentioned the February 23 and April 4 incidents but relied mainly on Graham's November 29 sale of the .22 caliber handgun in determining whether the enhancement applied. Graham objected, arguing the enhancement should not apply because the firearm at issue had not actually created an additional danger. The court disagreed with Graham's interpretation of the law, explaining:

> There's no question that the defendant possessed the gun, the defendant used that gun in furtherance of his drug trafficking by providing it to the other individual who was also in his mind engaged in drug trafficking with him. The idea that somehow it is less applicable to score the adjustment because there was not actual danger, because it was a law enforcement officer, undermines the fact that this defendant did not know that was a law enforcement officer. He thought he was giving a gun to another individual engaged in drug trafficking with him and that presents a danger to the community. It is exactly what the 2D1.1(b)(1) adjustment is designed to recognize and that is that when drugs are present with guns, it creates more danger, not only to the individuals involved in drug trafficking, but with those around them.

Sentencing Tr. at 15, *United States v. Graham*, No. 3:17-cr-00060-RGE (S.D. Iowa Apr. 3, 2018), ECF No. 52. The court calculated Graham's Guidelines range at 262–327 months.

The government requested a sentence at the low end of the Guidelines range, while Graham requested a below-Guidelines sentence of 178 months. In crafting its sentence, the court discussed aggravating and mitigating factors. The court listed as aggravating factors "the firearm that was involved in [the November 29] transaction,"

as well as "the other firearms that were either discussed or referenced in the course of this conspiracy" and the "volume of the illegal substances involved here." *Id.* at 23. The court considered Graham's break in criminal history and his difficult childhood to be mitigating factors. Ultimately, the court varied downward, imposing concurrent sentences of 240 months for the conspiracy charge and 120 months for the firearm charge.

## II. *Discussion*

On appeal, Graham renews his objection to the U.S.S.G. § 2D1.1(b)(1) enhancement. He also challenges his 240-month sentence as substantively unreasonable. He argues the district court should have varied further downward.

## A. *Enhancement*

"Section 2D1.1(b)(1) of the Sentencing Guidelines Manual provides for a two-level increase in a defendant's base offense level '[i]f a dangerous weapon (including a firearm) was possessed'" during a drug trafficking crime. *United States v. Rogers*, 150 F.3d 851, 857 (8th Cir. 1998) (alteration in original) (quoting U.S.S.G. § 2D1.1(b)(1)). "The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 cmt. n.11(A).

> For [the enhancement] to apply, the government must prove by a preponderance of the evidence that a weapon was present, and that it was not clearly improbable that the weapon had a nexus with this conspiracy. . . . A nexus exists where there is a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant.

*United States v. Perez-Guerrero*, 334 F.3d 778, 783 (8th Cir. 2003) (cleaned up). Specifically, "a drugs-for-gun trade is sufficient to warrant a two-level enhancement under § 2D1.1(b)(1)," notwithstanding the fact that the defendant "may have neither

fired nor flaunted the gun" while selling drugs. *Rogers*, 150 F.3d at 858. "The fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of destructive capacity. Rather, as experience demonstrates, it can be converted instantaneously from currency to cannon." *Smith v. United States*, 508 U.S. 223, 240 (1993).

Graham argues the enhancement should not apply because "[t]he gun and the drugs w[]ere never in Mr. Graham's possess[ion] at the same time. In fact there were never any drugs involved in the transaction." Appellant's Br. at 20. However, it is not necessary for the guns and the drugs to have been in a defendant's possession at the same time for the enhancement to apply: it is the "drug offense," rather than the drugs themselves, which is relevant to the enhancement. *See United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010). It is the nexus "between the weapon, the drug trafficking activity, and the defendant" which is key—not the nexus between the weapon and the actual drugs. *Perez-Guerrero*, 334 F.3d at 783 (internal quotation omitted). The enhancement addresses the danger presented by *drug traffickers* rather than by just drugs alone. Because the enhancement applies regardless of whether the guns and drugs were at the same place at the same time, Graham's argument fails.

Graham's argument that the enhancement should not apply because the .22 caliber handgun created no actual danger of violence is likewise unavailing. Graham claims that because the enhancement aims to deter and punish the dangerous drugs and guns combination, we should apply an "increased danger of violence" standard, requiring courts to affirmatively find that a firearm increased the danger of violence in the transaction at issue before applying the enhancement. Appellant's Br. at 19. However, Graham's proposed standard conflicts with our "not clearly improbable" standard by increasing the government's burden. *Perez-Guerrero*, 334 F.3d at 783.

The district court found by a preponderance of the evidence that Graham was engaged in a conspiracy to traffic drugs while in possession of a firearm. The

connection between the .22 caliber handgun and Graham's drug trafficking was "not clearly improbable." Graham does not deny having possessed the .22 caliber handgun; nor does he deny having offered the .22 caliber handgun as collateral for a drug deal. Therefore, the district court did not err in imposing the enhancement.

## B. *Reasonableness*

Graham argues the district court erred in sentencing him to 240 months' imprisonment because such a sentence was greater than necessary to impose just punishment, deter crime, and promote respect for the law. Graham maintains the court should have varied further downward in light of his difficult upbringing and life circumstances.

Graham's argument is without merit. "When a district court varies downward from a presumptively reasonable guideline sentence, 'it is nearly inconceivable that the court abused its discretion in not varying downward still further.'" *United States v. Zauner*, 688 F.3d 426, 429 (8th Cir. 2012) (quoting *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009)). This remains true even where the variance is modest. *See, e.g.*, *Lazarski*, 560 F.3d at 733 (varying downward from 120 to 108 months).

Here, the court explicitly considered Graham's difficult upbringing and life circumstances and varied downward 22 months from the Guidelines range of 262–327 months. Given the district court's thorough analysis, we find no abuse of discretion in its declining to vary even further downward.

## III. *Conclusion*

The judgment of the district court is affirmed.

_____