# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

—————————

Nos. 07-1811/07-2037

—————————

| | | |
|---|---|---|
| United States, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | Minnesota. |
| James T. Anderson, | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |
| | * | |
| | * | |

———————————

Submitted: January 15, 2008
Filed: July 3, 2008

———————————

Before LOKEN, Chief Judge, MURPHY, Circuit Judge, and JARVEY, District Judge.[1]

———————————

JARVEY, District Judge.

Defendant James Anderson was convicted of six counts of insider trading and five counts of money laundering arising out of his sales of stock in Zomax Corporation, the company for which he was CEO and chairman of the board of

—————————

[1]Judge John A. Jarvey, United States District Judge for the Southern District of Iowa, sitting by designation.

directors. On appeal, he claims that the government's evidence was insufficient to convict him, that the district court[2] erred in failing to give his theory-of-the-case jury instruction and that he is entitled to a new trial. The United States cross-appealed the district court's order imposing sentence, contending that the sentence is unreasonable because the court erroneously excluded certain stock sales as relevant conduct when considering the U.S. Sentencing Guidelines for illegal insider training. We affirm the defendant's conviction and sentence.

### *Procedural History*

The grand jury for the District of Minnesota returned a thirty-count indictment on August 2, 2005, charging the defendant, his wife Michelle Bedard-Anderson and his friend, Neil Dolinsky. The defendant was charged with conspiracy to commit securities fraud, 18 U.S.C. § 371; six counts of mail fraud, 18 U.S.C. §§ 1341, 1346; seventeen counts of insider trading, 15 U.S.C. § 78(j) and 17 C.F.R. § 240.10b-5; and six counts of money laundering, 18 U.S.C. § 1957. One of the money laundering counts was dismissed by the government prior to trial.

Trial commenced on May 22, 2006. The case against Neil Dolinsky was dismissed by the government prior to the close of its evidence. Following the close of the government's case, the district court dismissed all charges against Michelle Bedard-Anderson, and granted the defendant's motion for judgment of acquittal on the conspiracy count, the mail fraud counts and ten counts of insider trading. The jury found the defendant guilty of six counts of insider trading and five counts of money laundering. The defendant was sentenced to thirty months imprisonment, a $10,000 fine, restitution in the amount of $1,427,937.50, an $1,100 special assessment and a three year term of supervised release. He forfeited an additional $1,990,000 to the United States.

---

[2]The Honorable Paul A. Magnuson, Senior United States District Judge for the District of Minnesota.

## *Factual Background*

Defendant James Anderson was a founder of Zomax, a replicator of compact discs and DVDs with headquarters in Plymouth, Minnesota. Zomax's stock traded on the NASDAQ. The case against the defendant focused on events at Zomax between July and September of 2000. Beginning in July 2000, the defendant and other Zomax senior officers began receiving reports from managers at Zomax indicating that the company would fall significantly short of its expectations for third-quarter sales and earnings. On July 17, 2000, Zomax's chief financial officer distributed a report indicating that third-quarter sales would be approximately $60 million, significantly short of the $73 million in sales earlier projected by the board of directors.

Despite this projection, the defendant and other senior officers participated in a telephone conference call on July 24, 2000, with financial analysts from the securities industry. In that call, the defendant claimed to be optimistic about the third quarter and projected sales of just over $75 million.

On August 3, 2000, Zomax's controller prepared a sales report indicating that July sales were approximately ten percent short of Zomax's earlier forecast and that third-quarter sales would be approximately $60 million, as opposed to $75 million as earlier projected by Zomax's general managers. The defendant was one of a few officers in the executive group to receive this report.

Beginning on August 4, 2000, and continuing until September 20, 2000, the defendant liquidated every share of Zomax stock that he and his wife owned. Over 800,000 shares were sold during this period for nearly $14 million. This included the sale of 365,250 shares of Zomax stock held in the name of the defendant and his wife between August 4 and August 24, 2000, for approximately $6,300,000.

On August 17, 2000, the defendant and his wife created a charitable remainder annuity trust ("CRAT"). The trust was funded only with Zomax stock. The trustee

-3-

of the trust was a certified public accountant with little or no experience as a trustee, who had prepared income tax returns for the defendant and his wife. The defendant directed the CPA to open a brokerage account at Charles Schwab and Company in the name of the trust. The defendant told the trustee he wanted the Zomax stock sold and replaced with municipal bonds.

Between September 6 and September 20, 2000, the trustee sold all 465,000 shares of Zomax stock that had been transferred to the trust. The trustee sold this large block of stock "below the bid" to move the stock faster. Telephone toll records show that the defendant called or attempted to call the trustee on approximately twenty-two occasions during the fourteen days during which the stock was sold. The defendant expressed impatience and annoyance at the inability of the trustee to move the stock faster. However, at the close of the evidence, the district court found that, despite the defendant's involvement, the trustee had acted independently and consistent with his fiduciary duties. All counts relating to the insider trading in the CRAT stock were dismissed.

The day after the final shares of Zomax stock held by the trust were sold, the defendant gave approval to issue a third-quarter press release in advance of the ordinary third-quarter press release, announcing that Zomax would not meet its third-quarter sales and earnings projections. A copy of the press release was sent by facsimile to the Market Surveillance Section of the National Association of Securities Dealers as required when the company believes that the release will affect trading in the stock. Two minutes after receiving the release, the NASDAQ suspended trading on Zomax stock. When trading resumed thirty-seven minutes later, the price of Zomax stock dropped from $17.38 to $9.56. On September 22, 2000, the stock closed at $8.31 per share. By Monday, September 25, 2000, Zomax stock was trading at $6.84 per share.

Zomax had a written policy regarding insider trading which applied to officers, directors and other key management personnel. The policy prohibited trading in Zomax stock on the basis of material, inside information. The policy further required that all trading activity by officers and directors in Zomax stock be cleared in advance by Zomax's chief financial officer and its outside attorney. The defendant knew of the policy and never advised Zomax's CFO or its outside attorney of the sales or obtained clearance from either of them.

### *Sufficiency of the Evidence*

Corporate insiders with knowledge of material, nonpublic information have a duty to either disclose that information or refrain from using it in the sale or purchase of securities. Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b) (2007); 17 CFR § 240.10b-5 (2007).[3] Section 10(b) is violated "when a corporate insider trades

---

[3] Section 10(b) of the Securities Exchange Act states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
> . . .
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act [15 U.S.C. § 78c], any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5, promulgated by the SEC pursuant to its rulemaking power under 10(b), makes it unlawful for any person

(continued...)

in the securities of his corporation on the basis of material, nonpublic information." United States v. O'Hagan, 521 U.S. 642, 651-52 (1997). This is commonly referred to as insider trading.

This Court reviews the sufficiency of the evidence *de novo*, "viewing the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." United States v. Birdine, 515 F.3d 842 (8th Cir. 2008). "[W]e will reverse only if no reasonable jury would have reached the same result." United States v. Tindall, 455 F.3d 885, 887 (8th Cir. 2006). This standard of review is "very strict." United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (quoting United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004)).

*Materiality.* The defendant contends that the July 17, 2000, report was not "material" information as required by securities law. The defendant cites testimony from various officers and managers of Zomax who, in hindsight, expressed skepticism over the reliability of the sales forecast. The defendant concedes that the controller's August 3rd report contained a forecast for third-quarter revenue of approximately $60

---

[3](...continued)
>    (a) To employ any device, scheme, or artifice to defraud,
>
>    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
>    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. 240.10b-5 (2007).

million. Despite the fact that this report contained actual sales revenue from July 2000, the defendant again states that the report was not material because Zomax reports were rarely accurate and because Zomax had prospects for new business that the defendant contends could have made up the $15 million shortfall.

To violate insider-trading laws, the corporate insider must use *material*, nonpublic information. United States v. O'Hagan, 521 U.S. 642, 652 (1997). Further, "[t]o establish a criminal violation of Rule 10b-5, the Government must prove that a person 'willfully' violated the provision" and had knowledge of the rule. Id. at 665-66. "Fraudulent intent need not be proven directly, but can be inferred from the facts and circumstances surrounding the defendant's actions." United States v. Mooney, 401 F.3d 904, 944 (8th Cir. 2005) (citing United States v. Flynn, 196 F.3d 927, 929 (8th Cir. 1999)).

Information is material if there is a "substantial likelihood that a reasonable investor would consider it important in making an investment decision." Mooney, 401 F.3d at 945. While speculative or "soft" information is often immaterial, courts have been reluctant to find it *per se* immaterial. See United States v. Smith, 155 F.3d 1051, 1065 (9th Cir. 1998) ("We have never held – nor even hinted – that forward-looking information or intra-quarter data cannot, *as a matter of law*, be material."), *overruled on other grounds by* Konop v. Hawaiian Airlines, Inc., 236 F.3d 1035, 1042 (9th Cir. 2000). This court in Mooney found that an uncertain stock price increase was material, even though speculative, because "it would have been considered important in making investment decisions." Mooney, 401 F.3d at 945.

Several witnesses at trial expressed varying degrees of criticism of the reliability of the company's preliminary or "flash" sales reports. There was evidence that the reports had been significantly inaccurate at times. However, Zomax's controller testified about the detailed nature of these reports. The reports were important to the company, so important that they were prepared from information

supplied by the controller and general manager of each of Zomax's facilities. The manner in which these reports was protected by the company also suggests that they were more reliable and more important than the testimony of Zomax officers would suggest. The reports were treated as highly confidential and only a very small number of individuals had access to this information.

There was also testimony from an industry analyst who made it clear that institutional investors relied heavily on the sales forecasts disseminated to the public. It stands to reason that these institutional investors would want to know that Zomax deeply discounted the value of its most recent forecasts in favor of older, historical trends when predicting Zomax's third-quarter performance. Anderson's suggestion that Zomax was likely to capture other new sales that would make up the deficit in third-quarter sales is supported by exceedingly weak evidence. The jury was instructed on this as a part of the theory of the defense. The jury was under no obligation to accept it. It could find that the defendant traded on material inside information.

***"On The Basis Of"***. The defendant contends that he did not trade "on the basis of" material, nonpublic information because of a preexisting plan that he had to sell the stock. To prove insider trading, the Government must show that Anderson traded "*on the basis of* material, nonpublic information." O'Hagan, 521 U.S. at 642 (1997) (emphasis added). This requires that the defendant did not just possess the information but actually used the information. United States v. Smith, 155 F.3d 1051, 1069 (9th Cir. 1998). "[T]he government may not rest upon a demonstration that the suspected inside trader bought or sold while in possession of inside information; rather, it must, at a minimum, prove that the suspect used the information in formulating or consummating his trade." Id. at 1070 n.28. Use of such information can be established through circumstantial evidence. Id. at 1069. ("It is certainly not necessary that the government present a smoking gun in every insider trading

prosecution."). The court in Smith described the type of circumstantial evidence that might establish insider trading:

> [F]or instance, that an individual who has never before invested comes into possession of material nonpublic information and the very next day invests a significant sum of money in substantially out-of-the-money call options. We are confident that the government would have little trouble demonstrating 'use' in such a situation, or in other situations in which unique trading patterns or unusually large trading quantities suggest that an investor had used inside information.

Id. at 1069. The government also need not show that the inside information was the sole reason for the sale or purchase of securities. Id. at 1070 n.28. It is enough that the information was a "significant factor." Id.

The evidence showed that the defendant announced no formal plan in the spring of 2000 to sell Zomax stock. Zomax's chief financial officer testified that he was aware of Anderson's previous sales of stock and that he knew that Anderson would sell more stock. The chairman of Zomax's board of directors at the time of trial testified that Anderson's sales of Zomax stock were of particular interest to the board of directors. The board knew that Anderson would, from time to time, buy and sell Zomax stock. The board was interested to know Anderson's motivation at times for owning or selling Zomax stock. However, aside from this vague testimony concerning the defendant's propensity to buy and sell Zomax stock, there is no indication that the defendant announced a plan in 2000 to completely liquidate all of his Zomax stock within an eight week period during the third quarter of 2000. Further, these sales violated the Zomax policy requiring pre-clearance of the intended sales by the company's chief financial officer and outside counsel. The jury could find that the defendant traded "on the basis of" nonpublic information.

***Nonpublic Information.*** The defendant next contends that the jury could not find that he traded on the basis of "nonpublic" information. NASD rules require that the company issue a pre-release report when the company anticipates releasing financial information that has the potential to significantly affect trading in the stock. On September 21, 2000, defendant Anderson gave authorization to issue Zomax's pre-release concerning its third-quarter performance. That pre-release suggested that the failure of Zomax to achieve projected sales in the third quarter was attributable to general market softness in its European sales, the fact that Zomax's largest customer, Microsoft,[4] had not renewed an important piece of third-quarter business called the TechNet Refresh and because of higher polycarbonate prices.

The defendant contends that all of this information had been available to the public. According to Zomax's CFO, the company had not told the investing public of these events prior to September 21. Industry analyst William Warmington testified that because there was not a lot of publicly available information about this specialized business, the industry relied heavily on Zomax management for information about its business. The loss of the Microsoft business was well known to Zomax in the spring of 2000 but was not disclosed to the public. In July, Anderson had told industry analysts that Zomax had been stockpiling polycarbonate and therefore trends in polycarbonate prices were not an issue for Zomax. While the price of polycarbonate would certainly be public information, the securities industry had no way to determine its effect on Zomax other than to receive information from Zomax. The jury could find that the defendant traded on the basis of nonpublic information.

## *Denial of Proposed Jury Instruction*

The defendant next contends that he was entitled to a "good-faith" instruction stating that the evidence included grounds to find that the defendant acted in good faith by selling his Zomax stock pursuant to a pre-existing plan. Although this

---

[4]Microsoft accounted for approximately 40% of Zomax's sales in 2000.

specific instruction was denied, the court instructed the jury that it was defendant's position that the August sales of Zomax stock were based upon considerations that had nothing to do with the information that the government claimed was material inside information. Further, the court instructed the jury that a defendant who acts in good faith cannot be found to have the requisite knowing, willful or specific intent to defraud. The good-faith defense instruction further informed the jury that an honest mistake of judgment or negligence was not the equivalent of unlawful intent, that a person who believes in good faith that his actions comply with the law cannot be found guilty of willfully violating the law and that it remained the government's burden of proof to show that the defendant acted with the intent to defraud.

A defendant is entitled to a jury instruction if the request is timely, supported by the evidence, and a correct statement of the law. United States v. Meads, 479 F.3d 598, 601 (2007). A defendant is not entitled to a "particularly worded instruction." Id. (quoting United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002) (internal quotation marks omitted)). Further, a defendant is not entitled to an instruction that contains specific facts and details; a court may give an instruction with a generalized description of the law and facts. See United States v. Johnson, 278 F.3d 749, 752 (8th Cir. 2002) (refusing an instruction that specifically named alleged co-conspirators and described specific conduct). As noted above, there was little evidence to support the claim of a preexisting plan to sell the stock.

This court reviews the denial or acceptance of a proposed jury instruction for abuse of discretion. United States v. Counce, 445 F.3d 1016, 1019 (8th Cir. 2006). This includes a denial of an instruction regarding a theory of defense. See, e.g., United States v. Meads, 479 F.3d 598, 601 (2007) (reviewing the denial of a mere presence theory-of-defense instruction for abuse of discretion). "There is no abuse of discretion in denying a defendant's requested instruction 'if the instruction actually given by the trial court adequately and correctly cover the substance of the requested instruction.'" Meads, 479 F.3d at 601 (quoting United States v. Serrano-Lopez, 366

F.3d 628, 637 (8th Cir. 2004)). The jury instructions here properly covered the issue of good faith.

### *Admission of Evidence Over a Rule 403 Objection*

The defendant contends that the court should not have admitted evidence of Zomax's corporate policies regarding insider trading in part because no one in the company followed it. He further contends that the trial was rendered unfair by remarks made during opening statements and evidence relating to the CRAT sales and other charges that were dismissed during trial.

Rule 403 states the court "may exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The rule, however, "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." United States v. McAtee, 481 F.3d 1099, 1103 (8th Cir. 2007) (quoting Wade v. Haynes, 633 F.2d 778, 783 (8th Cir. 1981) (internal quotation marks omitted)).

The Zomax corporate policy regarding sales of its stock by officers was properly admitted into evidence. It was probative of the defendant's knowledge of insider-trading laws and of his intent to defraud. Similarly, regardless of the disposition of the charges arising out of the sale of the CRAT stock and against the defendant's friend, Neil Dolinsky, this evidence was also probative on the issue of the defendant's intent.

We have considered the defendant's other claims of error and reject them.

## *New Trial*

A district court may grant a new trial if "the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is appropriate where the court "finds that the verdict is contrary to the weight of the evidence" and where "the court believes a miscarriage of justice may have occurred." United States v. Smart, 501 F.3d 862, 865 (8th Cir. 2007) (internal quotations omitted). We review the denial of a motion for new trial for abuse of discretion. The defendant has not demonstrated a miscarriage of justice. The trial court did not abuse its discretion in denying the defendant's motion for a new trial.

## ***Government's Appeal From the Defendant's Sentence***

The government contends that the district court erred in calculating the defendant's total offense level under the Sentencing Guidelines. The court used only the stock sales in the counts for which the defendant was convicted in determining the increase to the base offense level associated with the defendant's gain from committing these crimes. Had the court used all of the defendant's August 2000 sales of Zomax stock to calculate his gain, he would have had a total offense level of 23, rather than 21, as determined by the court. His guideline range for imprisonment would have been 46 to 57 months, rather than the 37 to 46 months calculated by the district court.

The money laundering convictions carried significantly higher punishment pursuant to the sentencing guidelines. However, the district court found that the money laundering Guidelines overstated the seriousness of the defendant's conduct. The court further found that a sentence calculated pursuant to the Guidelines for securities fraud more appropriately reflected the severity of the offenses. Accordingly, the court departed downward pursuant to Sentencing Guideline 5K2.0 to bring the Guidelines associated with the money laundering counts in line with the securities fraud Guidelines.

The court engaged in an elaborate discussion of the factors set forth in 18 U.S.C. § 3553(a). The court discussed the seriousness of the offense as well as the history and characteristics of the defendant. The court determined that a sentence of thirty months imprisonment promoted respect for the law, provided just punishment, deterred future criminal conduct, protected the public from future crimes and avoided unwarranted sentencing disparity. The court specifically addressed other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company, the ongoing case against him from the Securities and Exchange Commission and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system. The court predicted that, upon release from prison, the defendant will lead a law-abiding life and contribute positively to society. Finally, the court found that a sentence of thirty months imprisonment was not disparate from other sentences for similar offenses. The court found that the sentence was reasonable, appropriate and just.

This court reviews a district court's sentence for abuse of discretion. Gall v. United States, 128 S. Ct. 586, 594 (2007). A reviewing court must evaluate the sentence for substantive reasonableness. A court "imposes an unreasonable sentence when it 'fails to consider a relevant factor that should have received significant weight; . . . gives significant weight to an improper or irrelevant factor; or . . . considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" United States v. Mousseau, 517 F.3d 1044, 1048-49 (8th Cir. 2008) (quoting United States v. Rouillard, 474 F.3d 551, 556 (8th Cir. 2007)). This court may consider the degree of variance, but a sentence outside the Guidelines range need not be justified by "extraordinary circumstances." This court is to apply a "totality of the circumstances" analysis, taking into account the extent of the variance while giving deference to the district court. Id. at 597; see also United States v. Lehmann, 513 F.3d 805, 808 (8th Cir. 2008) ("[A]s we understand Gall, we now examine the 'substantive reasonableness of the sentence' by taking into account 'the totality of the circumstances, including the extent of any variance from the Guidelines

range,' . . . and the strength of the stated justification, while viewing the district court's decision through a 'deferential abuse-of-discretion' lens." (quoting <u>Gall</u>, 128 S. Ct. at 598). The court here thoroughly considered the Guidelines and Section 3553(a) factors and did not abuse its discretion by imposing a thirty month sentence of incarceration.

The defendant's conviction and sentence are affirmed.

_____