GRUENDER, Circuit Judge.
Edward Brewer was convicted after a jury trial of conspiracy to distribute crack cocaine, distribution of crack cocaine, and possession with intent to distribute crack cocaine. See 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] sentenced Brewer to 370 months’ imprisonment and 10 years of supervised release. Brewer appeals his convictions and sentence. For the following reasons, we affirm.
*903 I. BACKGROUND
In September 2008, Kelly Meggers, an Iowa Division of Narcotics Enforcement Special Agent, arranged to buy crack cocaine from Brewer, a suspected drug dealer, with the help of a Drug Enforcement Administration (“DEA”) confidential source (“CS”). The CS called Brewer and introduced him to Agent Meggers over the phone. Agent Meggers arranged for the CS to meet Brewer on September 19, 2008, in order to buy a bag of crack cocaine. During the conversation, Brewer warned that he always has “a second set of eyes watch [his] back” during such deals.
On September 19, after strip searching the CS and equipping her with a digital recording device, Agent Meggers provided the CS with prerecorded buy money and drove her to the appointed location, a mall parking lot. A surveillance team consisting of DEA agents and Cedar Rapids Police Department officers was already in place at the parking lot. Brewer arrived in a white van and sold approximately 13.2 grams of crack cocaine to the CS for $800.
Following the sale, Brewer drove the white van away from the mall. Having learned ahead of time that Brewer’s driver’s license was suspended, Officer Dale Moyle requested that a patrol officer in a marked car stop Brewer. Officer Jeff Herbert pulled Brewer over. At least two other patrol cars arrived on the scene, and Brewer was arrested for driving with a suspended license. During the stop, Officer Chip Joecken recovered the $800 in prerecorded cash used in the undercover buy.
That same evening, Agent Meggers called Brewer to tell him that she was pleased with the crack cocaine and to arrange another purchase the following week. Despite what Brewer described as “the drama” of being arrested, he agreed to sell her more crack. In a series of recorded phone calls, Meggers asked to buy “two of them” at “8 a pop,” meaning that she wanted to purchase two $800 bags of crack cocaine.
During a September 23, 2009 phone call, Brewer directed Agent Meggers to go to the same mall parking lot, where he told her she would find a cup on the ground. Brewer instructed Meggers to retrieve a bag of crack cocaine hidden inside the cup and to leave the money under a nearby rock. Before the transaction, surveillance officers observed a purple Grand Am driven by Brewer’s girlfriend, Rosina Rhodes, stop in a nearby Burger King parking lot. Rhodes opened the car door and picked up a Burger King cup that was lying on the ground. Later, when Agent Meggers approached the area of the parking lot identified by Brewer, she found a Burger King cup with 27 grams of crack cocaine in it. Meggers left $1,600 in prerecorded buy money under a nearby rock, as instructed.
On September 30, 2008, Agent Meggers met Brewer in the parking lot of an apartment complex to buy more crack cocaine. When Meggers arrived, Brewer got in her truck and, without speaking, pulled a bag containing approximately 29 grams of crack cocaine out of his front pocket and placed it in the cupholder. Meggers paid Brewer, after which he promptly exited her vehicle and walked away. Rhodes picked Brewer up and drove away from the parking lot irregularly — doubling back over streets and making U-turns — in an apparent attempt to avoid being followed.
In subsequent recorded phone calls, Agent Meggers arranged to buy more crack cocaine from Brewer on October 9, 2008. Once again, surveillance officers positioned themselves in various places in the mall parking lot to observe the transaction. Shortly before noon, Rhodes parked her purple Grand Am in the lot. Twenty *904 minutes later, Brewer drove up. After speaking briefly with Rhodes, Brewer drove away. Rhodes remained in her car, watching the area of the parking lot where the Burger King cup had been left on September 23. Brewer then met Agent Meggers on the opposite side of the mall. Brewer got into Meggers’s truck, and she drove him to a different part of the parking lot. Brewer told her that he would reveal where the crack cocaine was hidden after she paid him in full. Meggers balked at this request, but Brewer remained steadfast. During their conversation, Brewer barely talked above a whisper and repeatedly turned up the radio. Agent Meggers later testified that Brewer was wearing a Bluetooth headset, which he appeared to be using to speak with someone else. Agent Meggers refused to pay without seeing the crack cocaine, and Brewer refused to show her the crack before she gave him the money. After about twenty minutes, Meggers drove Brewer back to his car.
Brewer was arrested as soon as he exited Meggers’s truck. The arresting officers recovered two cell phones from Brewer. They also found a Bluetooth headset on the ground nearby. Using cell phone records, Agent Meggers later discovered that Brewer had been on the phone with Rhodes while he was in Meggers’s truck.
While Brewer was being arrested, several officers approached Rhodes, who had been sitting in her car for nearly an hour. Rhodes consented to a search of her car and told the officers they would find a handgun in the trunk. The officers found the gun, which was loaded, in a case. The gun had a trigger lock on it. In a post-arrest interview, Brewer admitted that he knew Rhodes had purchased the handgun and that she always kept it in her trunk. Agent Meggers later searched the area of the parking lot that Rhodes had been watching and found approximately 83 grams of crack cocaine in a plastic shopping bag.
A federal grand jury returned a four-count indictment charging Brewer with various drug offenses. The grand jury later returned a five-count superseding indictment charging Brewer with conspiring with Rhodes to distribute fifty grams or more of crack cocaine (Count I), distribution of five grams of more of crack cocaine (Counts II, III, and IV), and possession with intent to distribute fifty grams or more of crack cocaine (Count V).
Brewer moved to suppress the $800 seized during the September 19, 2008 traffic stop. Following a suppression hearing, the magistrate judge recommended denying Brewer’s motion. The district court adopted the magistrate judge’s report and recommendation and denied Brewer’s motion to suppress.
The case proceeded to trial, and the jury found Brewer guilty on all counts. At sentencing, the district court found that Brewer’s base offense level was 32. The district court denied Brewer’s request for a two-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1, and applied a two-level enhancement for obstruction of justice, see U.S.S.G. § 3C1.1.[2] The court also applied two-level enhancements for role in the offense, see U.S.S.G. § 3Bl.l(e), and for possession of a firearm in connection with the offense, see U.S.S.G. § 2D1.1(b)(1). As a result, the district court determined that Brewer’s total offense level was 38 and, with a criminal history category of V, that Brewer’s advi *905 sory guidelines range was 360 months to life. The court sentenced Brewer to 370 months’ imprisonment, to be followed by 10 years of supervised release.
II. DISCUSSION
Brewer first challenges the denial of his motion to suppress. “We examine the factual findings underlying the district court’s denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated.” United States v. Estey, 595 F.3d 836, 839-40 (8th Cir.) (quoting United States v. Williams, 577 F.3d 878, 880 (8th Cir.2009)), cert. denied, 560 U.S.-, 130 S.Ct. 3342, 176 L.Ed.2d 1236 (2010). “In ‘reviewing the denial of a motion to suppress, we must examine the entire record, not merely the evidence adduced at the suppression hearing.’ ” United States v. Anderson, 339 F.3d 720, 723 (8th Cir.2003) (quoting United States v. Martin, 982 F.2d 1236, 1240 n. 2 (8th Cir.1993)).
Brewer argues that the police did not have probable cause to stop or arrest him on September 19, 2008, and that the search of his vehicle incident to his arrest was invalid. As an initial matter, we reject Brewer’s claim that the stop and arrest were improper. We have held that “[i]f an officer determines that a person is driving on a suspended license, then the officer has probable cause to arrest.” United States v. Jones, 479 F.3d 975, 978 (8th Cir.2007). Here, Officer Moyle saw Brewer drive away from a drug transaction at the mall and, having already determined that Brewer had a suspended license, see Iowa Code § 321.218, requested that a patrol officer stop Brewer. Accordingly, we conclude that Officer Herbert had probable cause to stop and arrest Brewer for driving with a suspended license. See Jones, 479 F.3d at 978.
Brewer’s second point is somewhat more nettlesome. Citing the Supreme Court’s decision in Arizona v. Gant, 556 U.S.-, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), Brewer argues that the search of his van was not a valid search incident to arrest because, after he exited the van and was arrested, the arresting officers could not have reasonably believed that he could access the interior of the van. Therefore, according to Brewer, the $800 in prerecorded buy money seized during the search must be suppressed.
The Supreme Court has repeatedly held that “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” See, e.g., Gant, 129 S.Ct. at 1716 (quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One such exception is a search incident to a lawful arrest. Id. Following a lawful “custodial arrest,” a search of the arrestee’s person incident to arrest “requires no additional justification.” United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The search of a vehicle is different, however — the Supreme Court held in Gant that “[pjolice may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.” Gant, 129 S.Ct. at 1723.
Brewer’s argument is premised on the assertion, which he makes for the first time on appeal, that the police seized the cash from his van. In his motion to suppress, Brewer asserted that the cash was *906 found in his pants pocket.[3] At the suppression hearing, however, DEA Officer Moyle, who was part of the surveillance team at the mall during the September 19 transaction, testified that the cash was seized from Brewer’s van. The magistrate judge credited Officer Moyle’s testimony and found that the cash was seized from the van.
As noted, we review the entire record, including the evidence adduced at trial, in reviewing the denial of a motion to suppress. See Anderson, 339 F.3d at 723. The Supreme Court has stated that when a district court’s factual “finding is based on his decision to credit the testimony of one or two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.” Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In this case, Officer Moyle admitted in his testimony at the suppression hearing that he did not participate in the stop, arrest, or search of Brewer on September 19, 2008. Officer Moyle thus lacked firsthand knowledge about where the seized money was found. Officer Joecken, who searched Brewer incident to the September 19 arrest, did not testify at the suppression hearing. At trial, however, Officer Joecken testified that he found the $800 in Brewer’s pants pocket. Brewer likewise testified at trial that the cash was seized from his pocket. Thus, the two participants in the search— Officer Joecken and Brewer — agreed that the $800 was seized from Brewer’s person, thereby contradicting Officer Moyle’s testimony. The district court adopted the magistrate judge’s finding that the cash was seized from Brewer’s van. After reviewing the entire record, we conclude that this is the rare case where the district court’s factual finding based on a decision to credit the testimony of a witness was clearly erroneous. Because the cash was seized from Brewer’s pants pocket, the holding in Gant concerning when the police may search the passenger compartment of a vehicle incident to arrest does not apply. Here, the officers had probable cause to arrest Brewer, and we conclude that the search of his person was a valid search incident to arrest, see Robinson, 414 U.S. at 234, 94 S.Ct. 467.
Brewer next argues that the evidence was insufficient to support the jury’s verdict. “We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict, and we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.” United States v. McCraney, 612 F.3d 1057, 1063 (8th Cir.2010) (citing United States v. Scofield, 433 F.3d 580, 584-85 (8th Cir.2006)).
Brewer does not argue that the Government failed to prove beyond a reasonable doubt any specific element of any of the offenses for which he was convicted. Instead, Brewer broadly contends that “the government witnesses did not tell the truth and the government’s evidence is inconsistent,” and that the “cumulative effect” of these alleged untruths and inconsistencies “establishes] that the verdict should be set aside.” We have held that “[credibility determinations by a jury are ‘virtually unassailable on appeal.’ ” United States v. Nguyen, 608 F.3d 368, 376 (8th Cir.2010) (quoting United States v. Vickers, 528 F.3d 1116, 1120 (8th Cir.2008)). And we have held that “we must presume that the trier of fact resolved any conflicts *907 in favor of the Government.” United States v. Littlewind, 595 F.3d 876, 882 (8th Cir.2010) (citing United States v. Water, 413 F.3d 812, 816 (8th Cir.2005)). Because we will not substitute our view of the evidence for the jury’s decision, see United States v. Triplett, 104 F.3d 1074, 1080 (8th Cir.1997), we reject Brewer’s sufficiency of the evidence claim, see Nguyen, 608 F.3d at 376.[4]
In any event, it is clear that the evidence against Brewer was compelling. Agent Meggers testified at length about arranging and executing multiple controlled buys of crack cocaine from Brewer; much of Meggers’s testimony was corroborated by audio and visual recordings. Various law enforcement officials testified that they witnessed Brewer’s interactions with the CS and Agent Meggers as well as Rhodes’s involvement. And abundant physical evidence — including several bags of crack cocaine, the prerecorded buy money, and the Burger King cup — tied Brewer to the crack cocaine sales. It is beyond serious question that the evidence in this case was sufficient to sustain Brewer’s convictions.
Brewer also argues that the district court abused its discretion in refusing to instruct the jury that Brewer faced a twenty-year mandatory minimum sentence if convicted on Counts I or V, and a ten-year mandatory minimum sentence if convicted on Counts II, III, or IV. See United States v. Anderson, 533 F.3d 623, 632 (8th Cir.2008) (“This court reviews the denial or acceptance of a proposed jury instruction for abuse of discretion.” (citing United States v. Counce, 445 F.3d 1016, 1019 (8th Cir.2006))). The district court is not required to instruct a jury about the sentencing, consequences of its verdict. Shannon v. United States, 512 U.S. 573, 575, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994). Indeed, “providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.” Id. at 579, 114 S.Ct. 2419; see also United States v. Thomas, 895 F.2d 1198, 1200 (8th Cir.1990) (“To inform a federal jury about a defendant’s punishment would only introduce improper and confusing considerations before it.”). Accordingly, we find no abuse of discretion in the district court’s refusal to instruct the jury about the punishment Brewer faced if convicted.
Brewer next challenges the district court’s decision to impose a two-level enhancement for possession of a firearm based on its finding that Brewer possessed the firearm in Rhodes’s trunk in connection with a drug trafficking offense. See U.S.S.G. § 2D1.1(b)(1). We review the district court’s finding for clear error. United States v. Braggs, 317 F.3d 901, 904 (8th Cir.2003) (citing United States v. Atkins, 250 F.3d 1203, 1213 (8th Cir.2001)).
The loaded handgun at issue here was recovered from a case in Rhodes’s trunk and was equipped with a trigger lock. Brewer first argues that he never had possession of the gun. “[P]os *908 session may be constructive, if it was reasonably foreseeable that a co-conspirator would have possessed a weapon.” Braggs, 317 F.3d at 904. Under the guidelines, co-conspirators are generally responsible for “all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.” U.S.S.G. § lB1.3(a)(l)(A). Here, Brewer was convicted, among other things, of conspiring with Rhodes to distribute crack cocaine (Count I).[5] And at Brewer’s sentencing hearing, Officer Steven Warner, who seized the handgun from Rhodes’s trunk, testified that Brewer admitted in a post-arrest interview that he knew that Rhodes owned a gun and that it was in the trunk of her Grand Am on October 9. Because Brewer and Rhodes conspired to distribute crack cocaine, Brewer’s knowledge that Rhodes had the loaded gun in her car during the aborted October 9 transaction is sufficient to establish Brewer’s constructive possession of the handgun. See Braggs, 317 F.3d at 904.
Brewer also argues that the handgun, which was indisputably present during the October 9 transaction, was not connected to the offense. To carry its burden of proving that the firearm enhancement should apply under § 2D1.1, “[t]he government must simply show that it is not clearly improbable that the weapon was connected to the drug offense.” United States v. Peroceski, 520 F.3d 886, 889 (8th Cir.2008); U.S.S.G. § 2D1.1 cmt. n. 3. “[T]he government need not show that the defendant used or even touched [the] weapon to prove a connection between the weapon and the offense.” Id. (quoting United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir.2000) (per curiam)).
While Brewer attempted to sell crack cocaine to Agent Meggers on October 9, 2008, Rhodes, sitting in her car, kept watch over Brewer’s nearby stash of crack cocaine and stayed on the phone with Brewer, all while the loaded handgun remained in the trunk of her car. Under the circumstances, we cannot say that the district court clearly erred in finding that the gun was connected to Brewer’s drug trafficking activities. See United States v. Jones, 327 F.3d 654, 657 (8th Cir.2003) (concluding that “it was not clearly improbable that the firearms possessed by defendant facilitated, or had the potential to facilitate, the drug trafficking offense” because “[t]he police found the firearms and ammunition in the trunk of the same car where they found the cocaine base” (internal quotation marks omitted)); Peroceski, 520 F.3d at 889 (“The gun need not even be operable for it to be connected to the offense.” (citing United States v. Luster, 896 F.2d 1122, 1128-29 (8th Cir.1990))); see also United States v. Held-berg, 907 F.2d 91, 93 (9th Cir.1990) (concluding that the presence of an unloaded firearm in a locked briefcase in the defendant’s trunk was sufficient to justify a two-level enhancement under § 2Dl.l(b)(l)).
Finally, Brewer challenges the reasonableness of his sentence, arguing that the district court should have granted a downward variance based on the sentencing disparity between crack and powder cocaine. “We review the reasonableness of a defendant’s sentence under a ‘deferential abuse-of-discretion standard,’ ensuring that the district court committed no significant procedural error and that *909 the sentence is substantively reasonable.” United States v. Midkiff, 614 F.3d 431, 445 (8th Cir.2010) (quoting Gall v. United States, 552 U.S. 38, 52, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)).
The Supreme Court held in Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), that “it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence ‘greater than necessary’ to achieve [18 U.S.C.] § 3553(a)’s purposes,” id. at 110, 128 S.Ct. 558. See also Spears v. United States, 555 U.S. -, 129 S.Ct. 840, 843-44, 172 L.Ed.2d 596 (2009) (per curiam) (“[W]e now clarify that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.”). Following Kimbrough and Spears, we have consistently held that district courts are not required to vary downward based on the crack/powder disparity in the advisory guidelines. See, e.g., United States v. Woods, 603 F.3d 1037, 1040 (8th Cir.2010); United States v. Davis, 583 F.3d 1081, 1099 (8th Cir.2009), cert. denied, 559 U.S. -, 130 S.Ct. 1555, 176 L.Ed.2d 143 (2010). Here, the district court considered and rejected Brewer’s request for a variance based on the crack/powder disparity. Thus, “[t]he district court was well within its discretion not to vary downward.” See Davis, 583 F.3d at 1099.[6]
III. CONCLUSION
For the foregoing reasons, we affirm Brewer’s convictions and sentence.[7]

. The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

. The obstruction-of-justice enhancement was based on the district court’s finding that Brewer committed perjury when he testified that, among other things, he was selling video games, not crack cocaine, to Agent Meggers.

. The Supreme Court decided Gant after Brewer’s trial and before this appeal. Brewer now claims that the money was seized from his van rather than from his person.

. In connection with this claim, Brewer argues that his attorney was constitutionally ineffective for failing to present the "arsenal of evidence” at his disposal, which, according to Brewer, "could have been used to challenge the government's evidence." Such claims "are usually best litigated in collateral proceedings,” United States v. Ramirez-Hernandez, 449 F.3d 824, 827 (8th Cir.2006), and, as is generally true on direct appeal, the record in this case “is not sufficiently developed to let us pass on the merits of [this] claim,” id. Thus, we decline to address Brewer's ineffective assistance of counsel claim. See id.

. Rhodes was tried separately and, following a mistrial, pled guilty to one count of using a communications device to facilitate a drug trafficking offense. See United States v. Rhodes, No. 09-3911, 389 Fed.Appx. 589, 2010 WL 2890590 (8th Cir. July 26, 2010) (unpublished per curiam).

. Brewer also argues that the district court committed a procedural error by failing to adequately explain its decision not to vary downward based on the crack/powder disparity. (Brewer does not argue that the district court believed that it lacked the authority to vary based on the crack/powder disparity.) Because he raises this claim for the first time on appeal, our review is for plain error. Brewer thus bears the burden of showing, among other things, that "there is a reasonable probability [he] would have received a lighter sentence but for the error.” See United States v. Bain, 586 F.3d 634, 640 (8th Cir.2009) (per curiam) (citing United States v. Pirani, 406 F.3d 543, 552 (8th Cir.2005) (en banc)). Brewer has not attempted to make such a showing, so his plain error claim necessarily fails. See United States v. Chauncey, 420 F.3d 864, 878 (8th Cir.2005).

. Pending before us is Brewer's motion to file a pro se supplemental reply brief. We generally do not consider pro se arguments raised by defendants who are represented by counsel on appeal. See, e.g., United States v. Moore, 481 F.3d 1113, 1114 n. 2 (8th Cir.2007). Because we granted Brewer's earlier motion to file a pro se supplemental brief, we exercise our discretion to grant his motion to file a supplemental reply brief. However, after considering his supplemental briefs, we conclude that the arguments he raises pro se are uniformly without merit. See United States v. Williams, 599 F.3d 831, 834 n. 3 (8th Cir.), cert. denied, 559 U.S. -, 130 S.Ct. 2134, 176 L.Ed.2d 753 (2010). We deny Brewer's motion for production of documents and his motion to supplement the record. In addition, on August 27, 2010, Brewer's counsel submitted a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure arguing that Brewer is entitled to resentencing under a retroactive application of the Fair Sentencing Act of 2010, Pub.L. 111-220, 124 Stat. 2372 (Aug. 3, 2010). We note that Rule 28(j) letters are to be used only to call our attention to significant authorities unknown to the parties pre-argument, should refer to the relevant page of the party's brief or point argued orally, and should not contain argument. Fed. R.App. P. 28(j). We disregard the submission to the extent it includes material outside these limitations. See Davis v. U.S. Bancorp, 383 F.3d 761, 763 (8th Cir. 2004). In any event, the letter raises no issues of import because the Fair Sentencing Act contains no express statement that it is retroactive, and thus the "general savings statute,” 1 U.S.C. § 109, requires us to apply the penalties in place at the time the crime was committed. See United States v. Brown, 2010 WL 3958760, -Fed.Appx. -, -- (8th Cir.2010) (unpub.); United States v. Gomes, 621 F.3d 1343, 1346 (11th Cir.2010) *910 (per curiam); United States v. Carradine, 621 F.3d 575, 579-81 (6th Cir.2010).