# United States Court of Appeals
## For the Eighth Circuit
_____

No. 16-1549
_____

United States of America

*Plaintiff - Appellee*

v.

Jaime Cesar Lora-Andres

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls
_____

Submitted: November 14, 2016
Filed: December 28, 2016
_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Following a jury trial, Jaime Cesar Lora-Andres was convicted for conspiracy to distribute methamphetamine and use of a communication facility to further a controlled substance conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 843(b), respectively. On appeal, Lora-Andres raises three issues. First, he claims the district

court[1] erred by denying his motion to suppress incriminating telephone recordings. Second, he contends the district court abused its discretion when it declined to instruct the jury regarding the ten-year mandatory minimum sentence applicable if he were to be convicted of distributing 500 grams or more of methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii). Third, he argues that the district court erred in applying a two-level enhancement for his role as a manager or supervisor in the conspiracy. For the reasons discussed below, we affirm.

In the summer of 2009, Lora-Andres began selling methamphetamine to a number of individuals, including Cheryl Pfeffer and Raul Tovar. Between 2009 and 2010, Pfeffer and Tovar purchased approximately forty ounces of methamphetamine from Lora-Andres. Lora-Andres fronted portions of the methamphetamine—a common practice in drug conspiracies—and Pfeffer and Tovar were required to pay Lora-Andres after they sold the drugs. Lora-Andres also sold methamphetamine to Estanislado Pineda, who had worked as a mechanic at Lora-Andres's car dealership. At Lora-Andres's behest, Pineda then began working for Lora-Andres, acquiring and distributing one to five pounds of methamphetamine over the course of the conspiracy. While working as Lora-Andres's distributor, Pineda met Heather LeClaire, who introduced him to drug users in the Sioux Falls area. Pineda began dating LeClaire and included her in the drug conspiracy. Lora-Andres would front the methamphetamine, and Pineda and LeClaire would wire him money after they completed sales.

In 2012, Pineda accompanied Lora-Andres on the first of two trips to California, and they brought one to two pounds of methamphetamine back to South Dakota. Upon returning to South Dakota, Lora-Andres continued to front methamphetamine to Pineda, sometimes through a mutual friend working at Lora-

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

Andres's direction. In early 2013, after selling all the methamphetamine, Lora-Andres called Pineda to discuss returning to California to acquire more.

By this time, Pineda and LeClaire were in contact with law enforcement officials. Pineda had previously served as a confidential informant for Special Agent Emmet Warkenthien of the Bureau of Alcohol, Tobacco, Firearms, and Explosives regarding unrelated matters. However, in July 2012, Pineda's status as a confidential informant was terminated after Special Agent Warkenthien lost contact with him. In February 2013, Pineda reestablished contact with Special Agent Warkenthien, claiming that he had information regarding Lora-Andres's methamphetamine operation. Pineda was instructed to communicate with law enforcement if Lora-Andres contacted him. At this time, Pineda was not formally recommissioned as a confidential informant.

In March 2013, Pineda and LeClaire made the second trip to California to obtain two pounds of methamphetamine for Lora-Andres. On March 3, 2013, Pineda contacted Special Agent Warkenthien and mentioned that he was en route to California to obtain methamphetamine. Pineda's trip occurred without Special Agent Warkenthien's permission or supervision, though Pineda updated him after the fact. After coordinating with Lora-Andres and obtaining approximately two pounds of methamphetamine, Pineda and LeClaire distributed small quantities while en route back to South Dakota and without Special Agent Warkenthien's knowledge. When Pineda and LeClaire neared Sioux Falls, law enforcement stopped the vehicle and seized the methamphetamine. Afterwards, law enforcement officials gave Pineda and LeClaire devices to record telephone conversations with Lora-Andres. Pineda and LeClaire then recorded conversations with Lora-Andres at the direction of law enforcement. The recordings were made while Lora-Andres was in California and without a warrant or his knowledge or consent. The recordings included incriminating conversations about the methamphetamine operation.

Lora-Andres moved to suppress the recordings, claiming they were not authorized under federal law. The district court denied Lora-Andres's motion as well as his request that the jury be instructed regarding his potential mandatory minimum sentence. The jury rendered a guilty verdict on both counts, and at sentencing, the district court found that Lora-Andres's role in the conspiracy justified a two-level enhancement pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.1(c) for his role as a manager or supervisor in the methamphetamine conspiracy. With an advisory sentencing guidelines range of 188 to 235 months, the district court sentenced him to 188 months' imprisonment for the methamphetamine conspiracy. The court also imposed a term of 48 months' imprisonment, to run concurrently with the 188-month sentence, for using a communication facility to further a controlled substance conspiracy.

Lora-Andres first argues that the district court erred in denying his motion to suppress because the Wiretap Act, 18 U.S.C. §§ 2510-22, did not permit Pineda and LeClaire to record the phone conversations. *See id.* at § 2515 ("Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received . . . in or before any court . . . ."). "When reviewing the denial of a motion to suppress, we review the district court's legal conclusions de novo but its factual findings for clear error." *United States v. Burston*, 806 F.3d 1123, 1126 (8th Cir. 2015).

The Wiretap Act generally forbids the interception and recording of phone calls, though it allows "a person acting under color of law to intercept a . . . communication, where such person is a party to the communication." 18 U.S.C. § 2511(2)(c). Because Pineda and LeClaire intercepted and recorded their phone calls with Lora-Andres, the dispositive question concerning admissibility is whether they were "acting under color of law" when doing so. Lora-Andres contends that they were not because Special Agent Warkenthien was not directly supervising Pineda and LeClaire when they traveled to California and did not formally register

them as confidential informants. More importantly, Pineda and LeClaire misled law enforcement officials when they distributed methamphetamine while giving the appearance of cooperation. Thus, Lora-Andres asserts that they could not have been "acting under color of law" when recording their conversations with him.

Lora-Andres's argument fails because it elides a distinction between the acts preceding the phone calls and the actual recording of the phone calls. Even though Pineda and LeClaire were not registered as confidential informants, were not under direct law enforcement supervision during their trip to California, and were illegally selling drugs, they recorded the phone calls with Lora-Andres after these events, when they were acting at the direction of law enforcement. They were therefore "acting under color of law" when recording the phone calls, and thus, the recordings were legal under § 2511(2)(c).[2] *See United States v. Rich*, 518 F.2d 980, 985 (8th Cir. 1975) (holding that when a person recording a conversation "was acting at the direction of government investigators," that person was "acting under color of law"). Accordingly, we affirm the district court's denial of Lora-Andres's motion to suppress.

Lora-Andres next asserts that the district court abused its discretion when it refused to instruct the jury that Lora-Andres faced a ten-year mandatory minimum prison sentence if convicted of conspiracy to distribute 500 grams or more of methamphetamine. *See United States v. Brewer*, 624 F.3d 900, 907 (8th Cir. 2010).

---

[2]Lora-Andres argues that even if Pineda and LeClaire were "acting under color of law" pursuant to the Wiretap Act, California law still requires suppression. *See* Cal. Penal Code §§ 630-38 (making it a crime to record private conversations without the consent of all parties and permitting suppression of such recordings in criminal proceedings). However, "[w]e have consistently held that evidence obtained in violation of a state law is admissible in a federal criminal trial if the evidence was obtained without violating the Constitution or federal law." *United States v. Padilla-Pena*, 129 F.3d 457, 464 (8th Cir. 1997) (citation omitted).

Lora-Andres contends that in order for the jury to fulfill its role as the community's conscience, it should be allowed to hear the potential ramifications of a conviction. However, "[t]he district court is not required to instruct a jury about the sentencing consequences of its verdict," for doing so "invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.* (quoting *Shannon v. United States*, 512 U.S. 573, 575, 579 (1994)). As a result, the district court did not abuse its discretion by refusing to instruct the jury about the punishment Lora-Andres faced if convicted.

Finally, Lora-Andres claims that the district court improperly applied a two-level enhancement for being a manager or supervisor of criminal activity. *See* U.S.S.G. § 3B1.1(c); *id.* at cmt. n.2 ("To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants."). "The government bears the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted," *United States v. Gaines*, 639 F.3d 423, 427 (8th Cir. 2011), and "[t]he district court's factual findings, including its determination of a defendant's role in the offense, are reviewed for clear error, while its application of the guidelines to the facts is reviewed de novo," *id.* at 427-28 (quotation omitted).

We conclude the district court did not clearly err in finding that Lora-Andres played a managerial or supervisory role in the methamphetamine operation. Pfeffer testified that she and Tovar obtained approximately forty ounces of methamphetamine from Lora-Andres over the course of numerous meetings. She also testified that Lora-Andres fronted the methamphetamine, knew they were reselling it, and required them to repay him. Thus, contrary to Lora-Andres's allegations, Pfeffer and Tovar were not merely end users or customers but participants in the conspiracy. *See United States v. Garcia-Hernandez*, 530 F.3d 657, 665 (8th Cir. 2008) (finding U.S.S.G. § 3B1.1 enhancement was warranted because the defendant fronted participants methamphetamine).

Furthermore, Pineda testified that Lora-Andres recruited him into the drug conspiracy. He and LeClaire testified Lora-Andres fronted them large quantities of methamphetamine to sell on his behalf. Additionally, Lora-Andres obtained multiple pounds of methamphetamine in California and twice directed Pineda to transport the drugs back to South Dakota. These facts are sufficient to establish that Lora-Andres acted as manager or supervisor of criminal activity. *See* U.S.S.G. § 3B1.1 cmt. n.4 ("Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, . . . the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.").[3] Thus, the district court did not clearly err in applying a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c).

For the foregoing reasons, the judgment of the district court is affirmed.

_____

---

[3]Lora-Andres claims Pineda and LeClaire cannot simultaneously qualify as both confidential informants and "participants" under U.S.S.G. § 3B1.1. *See* U.S.S.G. § 3B1.1 cmt. n.1 ("A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant."). However, Pineda and LeClaire were extensive participants in the methamphetamine operation long before they began working with law enforcement, and any previous cooperation between Pineda and Special Agent Warkenthien dealt with matters unrelated to Lora-Andres. *See United States v. Capps*, 952 F.2d 1026, 1028 n.2 (8th Cir. 1991) (rejecting as "frivolous" defendant's argument that a party "may not be counted as a participant because he was an informer during part of the conspiracy period"); *United States v. Dyer*, 910 F.2d 530, 533 (8th Cir. 1990) (finding a government informant qualified as a participant because he was involved in the drug conspiracy before working with the government). Therefore, Pineda and LeClaire are "participants" for U.S.S.G. § 3B1.1 purposes.